**UNITED STATES, Appellee,**

v.

**Edward M. TUGGLE, Sergeant First Class U.S. Army, Appellant.**

No. 66,125.
CM 8902672.

U.S. Court of Military Appeals.

Argued Oct. 1, 1991.

Decided Feb. 21, 1992.

For Appellant: *Captain Robert L. Carey* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Deborah C. Olgin* (on brief).

For Appellee: *Captain Kenneth T. Grant* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief); *Colonel Dayton M. Cramer* and *Captain Donald W. Hitzeman.*

*Opinion of the Court*

COX, Judge:

This case involves the execution of contingent confinement based upon a convicted servicemember's failure to pay an adjudged fine. We hold that the convening

authority erred by ordering contingent confinement to be executed without giving full consideration to appellant's offer to pay the fine in installments. RCM 1113(d)(3), Manual for Courts–Martial, United States, 1984.

I

Appellant was tried by a military judge sitting alone as a general court-martial at Fort Polk, Louisiana. He pleaded guilty to and was convicted of one specification of making a false official statement and two specifications of larceny of military property (in excess of $8,000.00), in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 USC §§ 907 and 921, respectively. He was sentenced to pay a fine of $10,000.00 and to be reduced in rank to E–4. The sentence adjudged also included a provision for contingent confinement should the fine imposed remain unpaid 30 days after the convening authority took action. This provision called for appellant to be confined for a period of 1 year and further reduced in rank to E–1.

On November 3, 1989, the convening authority approved the adjudged sentence with the provision calling for contingent confinement upon failure to pay the $10,-000.00 fine. On December 3, 1989, 30 days later, the fine remained unpaid.

The following day, on December 4, the convening authority appointed a military magistrate to determine whether Tuggle "has made good-faith efforts to pay the fine but could not" due to indigence.[1] RCM 1113(d)(3). A memorandum from the staff judge advocate to Tuggle, dated December 4, 1989, notified Tuggle that his

fine had to be paid by December 4. The memorandum also informed Tuggle of the appointment of a military magistrate, the scheduled hearing, and that "you [Tuggle] may present evidence that you have made a good faith effort to pay but cannot because of indigency." Insofar as this record shows, this memorandum appears to be the first time Tuggle was informed that, should he be unable to accumulate the entire amount of the fine, "a good faith effort" on his part would be viewed favorably by the convening authority.

On December 6, 1989, the appointed military magistrate conducted the hearing and Tuggle was present with counsel. Tuggle was advised of his rights, presented evidence, testified, and was cross-examined. From this hearing, the military magistrate produced an undated document entitled "Findings and Recommendations." The military magistrate reported to the convening authority that he found Tuggle was "not indigent" and that, although he had taken "reasonable efforts" to obtain a loan, he had not made "a good-faith effort to meet his court ordered obligation."[2]

On December 12, 1989, Tuggle, "through his defense counsel, request[ed] that the convening authority" allow him "the opportunity to pay the amount of the unpaid fine in monthly forfeitures or installments as a reasonable alternative punishment to the sentence of confinement for a year and reduction to E–1." However, on December 13, the convening authority implicitly adopted the magistrate's findings and recommendation and ordered the 1–year confinement and a further reduction in rank to E–1 to be executed.[3]

---

1. I concur with Chief Judge Sullivan that the Chief of Criminal Law, who served as the hearing officer, is not a disinterested judge, no matter how hard he may try to be. I am not certain, however, that this is a judicial decision, rather than one for the convening authority to make after the military judge has finished with the case. This issue was neither argued nor briefed. Thus, I reserve judgment.

2. The military magistrate's specific findings and recommendation are in the Appendix.

3. There was some question at the Court of Military Review as to whether the reduction in rank to E–1 was itself contingent upon Tuggle's failure to pay the fine. As that court aptly noted, "[T]he propriety of the military judge's imposition of a reduction in this case is moot, since the execution of confinement upon nonpayment of the fine reduced the appellant to Private E1 by operation of law." 31 MJ 778, 781 (1990). In this case, confinement was imposed, and the automatic reduction took place. Art. 58a, Uniform Code of Military Justice, 10 USC § 858a.

The Court of Military Review affirmed the findings and the sentence. 31 MJ 778 (1990). Addressing the issue of confinement, the court held that the military magistrate's findings and recommendation were supported by the record and were correct.

## II

In the military today, monetary penalties are limited to forfeitures and fines.[4] RCM 1003(b)(2) and (3). Under RCM 1003(b)(3), "[a]ny court-martial may adjudge a fine instead of forfeitures."[5] The imposition of a fine generally has been reserved for those instances where a servicemember has been "unjustly enriched" by the offense committed.[6] RCM 1003(b)(3), Discussion. In this case, imposition of a fine certainly fell within what would be considered "unjust enrichment," given Tuggle's conviction for larceny of United States property which he later sold for a profit exceeding $8,000.00.

 As an additional provision to a sentence adjudging a fine, contingent confinement may be used as a sanction for willful failure to pay a fine. *Bearden v. Georgia*, 461 U.S. 660, 668, 103 S.Ct. 2064, 2070, 76 L.Ed.2d 221 (1983). RCM 1003(b)(3) specifically states:

In order to enforce collection, a fine may be accompanied by a provision in the sentence that, in the event the fine is not paid, the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired.

However, under RCM 1113(d)(3):

*Confinement may not be executed for failure to pay a fine if the accused demonstrates that the accused has made good faith efforts to pay but cannot because of indigency, unless the authority considering imposition of confinement determines, after giving the accused notice and opportunity to be heard, that there is no other punishment adequate to meet the Government's interest in appropriate punishment.*

(Emphasis added.) *United States v. Soriano*, 22 MJ 453, 454 (CMA 1986). *See Bearden v. Georgia, supra*, 461 U.S. at 672–73, 103 S.Ct. at 2073; *United States v. Rascoe*, 31 MJ 544, 557 (NMCMR 1990). *Cf. Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). RCM 1113(d)(3) guards against the possibility of servicemembers being imprisoned solely because of their inability to pay an adjudged fine.[7] Drafters' Analysis, Manual, *supra* at A21–77 (Change 3). *Cf. Griffin v. Illinois*, 351

---

This does not change because the confinement was a substitute punishment for the unpaid fine.

4. Prior to the Manual for Courts–Martial, United States, 1984, "detention of pay" was also recognized. Detention of pay would involve pay being detained and then returned to the servicemember at the expiration of a specified period of time. Para. 126*h*(4), Manual for Courts–Martial, United States, 1969 (Revised edition). *Cf.* RCM 1003(b), 1984 Manual, *supra*.

5. Fines take "the nature of a judgment and, when [a fine is] ordered executed," a servicemember is "immediately liable to the United States for the entire amount of" the fine "specified in the sentence." RCM 1003(b)(3), Discussion.

6. A fine also serves as a "monetary penalty" for "a civilian subject to military law." RCM 1003(b)(3), Discussion.

7. A servicemember will not be imprisoned for failure to pay a fine "unless he 'willfully refused

to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay.'" *United States v. Soriano*, 22 MJ 453, 454 (CMA 1986), *quoting Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983).

However, where a willful failure to pay a fine has occurred, the idea of "$40 or 40 days" is still valid. *Williams v. Illinois*, 399 U.S. 235, 242 n. 19, 90 S.Ct. 2018, 2023 n. 19, 26 L.Ed.2d 586 (1970), *citing Ex parte Smith*, 97 Utah 280, 92 P.2d 1098 (1939), and *cf. Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Justice Brennan, writing for the Court in *Tate*, stated: "We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." 401 U.S. 395, 400, 91 S.Ct. 668, 672, 28 L.Ed.2d 130 (1971). *See Bearden v. Georgia, supra*. *See also United States v. Mastropierro*, 931 F.2d 905 (D.C.Cir.1991); 18 USC § 3614; § 5E1.2(h), United States Sentencing Guidelines (1989).

U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."). Such action would rise to a violation of the equal protection component of the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). *See also Tate v. Short, supra; Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). In this case, Tuggle's financial limitations clearly could have placed him at some level of indigence. Moreover, the Government had alternative punishments adequate to meet its penal interest. Accordingly, we hold that the convening authority erred as a matter of law when he failed to consider whether the installment payment plan would satisfy the ends of justice in this case.

## A

■ Given the evidence in this case, a strong argument could be made that Tuggle did not have sufficient liquid assets to pay the fine. As found by the Court of Military Review, Tuggle's accrued salary, from the moment sentence was adjudged to when the fine was due, in its entirety, would not have been sufficient to satisfy the adjudged fine. Second, the sale or repossession of Tuggle's automobile would not have garnered any cash.[8] The market value of the car was $19,000.00, while the total amount Tuggle owed was over $23,-000.00. Third, the finding or the conclusion that Tuggle's support payments to his minor children and his mother were "voluntary" and not a legal or a *moral* obligation is not substantiated in this record. *See generally* 59 Am.Jur.2d, Parent and Child §§ 41 and 91 (1987). In any event, this Court will not venture to restrict such a worthy expenditure based upon the record before us. Fourth, this Court also will not

attempt to impose a duty on family members to mortgage their homes to satisfy a fine adjudged upon a servicemember. The fine in this case is one to correct an unjust enrichment by a convicted servicemember and not to impose collateral hardship on a servicemember's family. Therefore, we cannot subscribe to the Court of Military Review's position (31 MJ at 780) that Tuggle's mother could have collected $6,000.00 for Tuggle by incurring another mortgage on her home (*id.* at 779).

## B

We note that the military magistrate stated that Tuggle had "made reasonable efforts" in attempting to obtain a loan. We also acknowledge the Government's argument that, although Tuggle may have undertaken "reasonable efforts" to obtain a loan, he otherwise made no bona fide efforts to pay the fine. It is reasonable to expect that Tuggle would use all available assets to pay the fine. He was sentenced on August 21, 1989, and the convening authority took action on November 3. Therefore, Tuggle had approximately 10 weeks, in addition to the 30 days granted by the sentence, to raise the money. However, it is clear from the sentence, the Government's actions, and Tuggle's actions, that he thought the fine was an all or nothing proposition.

## C

■ In any event, the convening authority erred in not considering whether the purpose of the fine could have been accomplished by adopting what Tuggle had proposed himself, that being voluntary allotments from his pay.

Allowing one who has unjustly enriched himself the opportunity to pay a fine over a period of time is a widely accepted princi-

---

8. We would note that it seems perfectly reasonable to have Tuggle part with his automobile. Indeed, the purpose of Tuggle's fine was to correct an unjust enrichment on his part from the sale of United States property. Any arrangement made to pay the fine would seem counterproductive if it allowed Tuggle the continued enjoyment of an automobile valued at $19,-000.00, and probably acquired, in part, from his money-making scheme. The text merely describes the financial reality facing Tuggle; selling the automobile would have only reduced his debt load, not produced sufficient funds to satisfy the debt from current assets.

ple. Under the United States Sentencing Guidelines (U.S.S.G.), provisions are established for a fine to be paid in installments should the "lump sum ... have an unduly severe impact on" a defendant. § 5E1.2(g), U.S.S.G. (1989). Additionally, under the United States Code, procedures allow for a delinquency status when a fine is 30 days late and a default classification should payment be delinquent for more than 90 days. 18 USC § 3572(h) and (i). Should collection of the fine become a problem, the Government may petition for modification or remission of the fine. 18 USC § 3573. Should the Government show "that reasonable efforts to collect" the fine "are not likely to be effective, the court may" then "remit all or part of the unpaid" fine, defer payment (to a later date or on an installment schedule), or extend the payment date. 18 USC § 3573.

 Tuggle should have been given the opportunity to pay the adjudged fine in good faith. Our review of the record of trial, the Summary of the Proceedings digesting the hearing held by the military magistrate, and more importantly, the memorandum of defense counsel delivered to the convening authority prior to the convening authority's executing the contingent confinement indicates that Tuggle was not given an opportunity to make a good-faith effort to pay the fine. The single most important factor in our decision was the memorandum sent by Tuggle, through defense counsel, to the convening authority. In this memorandum, Tuggle clearly states:

1. The accused through his defense counsel requests that the convening authority afford SPC Tuggle the opportunity to pay the amount of the unpaid fine in monthly forfeitures or installments as a reasonable alternative punishment to the sentence of confinement for a year and reduction to E–1.

Such an opportunity was neither afforded nor was any reason expressed in the record for rejecting this proposal. Therefore, we find that the convening authority erred in ordering the confinement and the reduction to E–1 executed. The assertion by appellate defense counsel (Final Brief at 8) that "appellant has already served the confinement" is not challenged, so the fine has been satisfied by operation of law and no longer has legal effect. Thus, the appropriate remedy is to invalidate the fine and the reduction to E–1 by affirming only so much of the sentence as provides for reduction to E–4. There is no need for the Court of Military Review to take further action.

III

The decision of the United States Army Court of Military Review is reversed as to the sentence in excess of reduction to E–4. The remainder of the sentence approved by the convening authority in his Action of December 13, 1989, as well as the fine, are set aside. All rights, privileges, and property of which appellant has been deprived by virtue of the part of the sentence which is set aside will be restored.

Judges CRAWFORD, GIERKE, and WISS, and Senior Judge EVERETT did not participate.

APPENDIX

1. Specialist Tuggle is not indigent. Since his sentencing he has received full pay as a sergeant first class for at least three months. He is now entitled to pay and allowances as a specialist. His obligations do not exceed his income. For this three month period he has continued to own and operate a Chrysler Le Baron convertible valued at about $19,000.

2. Specialist Tuggle made reasonable efforts to get a loan for $10,000 but was unable to obtain a loan for that amount.

3. Specialist Tuggle did not make a good faith effort to meet his court ordered obligation. Specialist Tuggle testified that he has no money in his savings account or any cash reserves whatsoever although he has received pay as a sergeant first class since his sentencing and resides in government furnished quarters. As of the date of this hearing, some three months after sentence was adjudged in court, numerous voluntary

pay allotments were still in effect which could have been cancelled to help him meet his obligation, to include U.S. Savings bonds, life insurance payments and an allotment to his mother from whom he was attempting to obtain a loan. He had not advertised his automobile for sale or attempted to return it to the dealership or finance company, which would have provided him with an additional $600 per month to apply to his debt. He has not taken appropriate action to determine the cash value of his insurance policies and obtain money from that source. These are steps a reasonably prudent individual would have taken. His failure in this regard indicates a lack of desire rather than a lack of ability.

## RECOMMENDATION

I recommend the confinement portion of the sentence be ordered executed.

SULLIVAN, Chief Judge (concurring):

I join my Brother, Judge Cox, in reversing the decision below affirming the sentence of imprisonment and the reduction to pay grade E–1 for nonpayment of the adjudged fine. *See generally United States v. Dukes*, 5 MJ 71 (CMA 1978).

I additionally note that the officer who had been Chief of Criminal Law of the 5th Infantry Division at the time charges were preferred sat as the post-trial hearing officer in this case. Admittedly, defense counsel was informed of this fact and declined to object. However, I am not convinced that this officer was qualified to act as "a sentencing court" in the sense intended in *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2072, 76 L.Ed.2d 221 (1983), and it appears to me that plain error occurred. *See United States v. Lynch*, 13 MJ 394, 396–97 (CMA 1982); *cf. United States v. Marsh*, 21 MJ 445, 448 (CMA), *cert. denied*, 479 U.S. 1016, 107 S.Ct. 666, 93 L.Ed.2d 719 (1986).

In this regard, I would add the following comments: If our system of military justice is to be viewed as fair and unbiased, care must be taken to insure that those who sit in judgment, even at a post-trial hearing such as the one in the instant case, be viewed as neutral, fair, and unbiased. There must be a "level playing field" at all stages of the United States military justice process. If a United States District Judge allowed the United States Attorney in his District to conduct a factfinding hearing on a post-trial sentencing matter, the conflict of interest would be apparent to all members of the bar. So, too, in the military, conflicts of interest must be avoided. A judge should recuse himself if his sitting would cause even the perception of unfairness in the case. Commanders, counsel, judges, and even Congress must be ever vigilant to rid our system of any conflicts of interest which undermine the excellent system of justice that the American military is privileged to have. *See generally United States v. Hagen*, 25 MJ 78, 86 (CMA 1987) (Sullivan, J., concurring), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988).