Charlie E. SPRIGGS, Senior Airman
U.S. Air Force, Appellant

v.

UNITED STATES, Appellee.

No. 94–8057.

CMR Misc. No. 93–13.

U.S. Court of Military Appeals.

Argued March 15, 1994.

Decided Aug. 19, 1994.

For Appellant: *Captain Robert E. Watson* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Major Jules D. Silberberg* (argued); *Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

WISS, Judge:

This is a writ-appeal petition under Rule 4(b)(2), United States Court of Military Appeals Rules of Practice and Procedure, 38 MJ LXXVII (July 1, 1983), to review the Court of Military Review's denial of petitioner's petition for extraordinary relief. *See* 28 USC § 1651(a). Spriggs complains that the convening authority improperly vacated the suspension of his sentence. *See United States v. Bingham,* 3 MJ 119, 120 n. 2 (CMA 1977) (vacation proceedings "are integral parts of a court-martial sentence which, as such, are reviewable by this Court"). Particularly, he urges (1) that the open-ended period of time required to fulfill one of the specified conditions of the suspension was unreasonable and (2) that his failure to complete that specified condition was the result of financial inability which, in turn, was caused by the convening authority's improperly placing him on involuntary excess leave.

On consideration of the briefs and oral argument of the parties, we hold that the vacation here of Spriggs' suspended sentence was improper in two respects. First, the literal language of the convening authority's action leaves no room to doubt that the specified conditions applied to suspension only of the punitive discharge and reduction in grade, not of the confinement; accordingly,

vacation of the suspended confinement on the alleged basis of Spriggs' failure to fulfill one of the specified conditions was not lawful. *See Spriggs v. United States,* 39 MJ 429 (CMA 1994) (Order Pendente Lite). Second, in the context of the unique combination of circumstances in this case, *infra,* the uncertain and open-ended period of time required to fulfill one of the conditions made the period of suspension of the discharge and reduction in grade "unreasonably long." *See* RCM 1108(d), Manual for Courts–Martial, United States, 1984.

## I

## A

At a general court-martial convened on April 1, 1992, Spriggs pleaded guilty to committing indecent acts with a female under the age of 16 years, and he was sentenced to a dishonorable discharge, confinement for 3 years, and reduction to the grade of E–1. His pleas were pursuant to a pretrial agreement with the convening authority that provided, *inter alia:*

> The approved sentence will not exceed a Bad Conduct Discharge; confinement adjudged; and reduction to the grade of E–1. Any forfeitures adjudged will be disapproved.
>
> That portion of the punishment adjudged that relates to the Bad Conduct Discharge; a term of confinement for any period of time; and reduction below the grade of E–4 shall be suspended based upon the successful completion of the following promises and conditions:
>
> (1) That the accused will present himself [to a particular alcohol rehabilitation center for evaluation and, if warranted, treatment to completion of the program];
>
> (2) *That the accused will present himself to the Sex Offenders Program located in Wichita Falls, Texas, that is administered by Mr. Ron Burks or its equivalent as determined by the convening authority's staff judge advocate, for evaluation and participation in the Sex Offenders Program. The accused will bear the cost for payment of his evaluation, participation, and treatment in this program un-*

> *der such terms as prescribed and agreed to by Mr. Ron Burks or an equiv[a]lent provider, without use of Air Force funds.... The length of participation in this program for purposes of completion of the program will be fixed by the professional administering the program.* Completion must be certified by the professional administering the program and the accused will provide a duly certified report of completion to the Convening Authority's staff judge advocate.
>
> (3) That the accused will pay restitution to the victim ... in the amount of $3,000.00 ... [on a specified schedule].
>
> (4) That, for a period of five years following the date of the Convening Authority's action on a sentence including suspended confinement, the accused will not serve any alcoholic beverages to any persons under the age of 21 and will conform his conduct regarding alcoholic beverages to the standards set by Texas State Law. Additionally, the accused will refrain from committing any other offense that is punishable under the UCMJ by confinement in excess of one year.
>
> Upon successful completion of the promises and conditions numbered (1), (2), and (3) above, that portion of the above sentence related to the suspended Bad Conduct Discharge and reduction below the grade of E–4 shall, unless sooner vacated, be remitted; and upon successful completion of the promises and conditions numbered (1), (2), (3) and (4) above, that portion of the above sentence related to suspended confinement, unless sooner vacated, shall be remitted.

(Emphasis added.)

On May 14, 1992, the convening authority took his action in this case. Obviously deviating for some reason from the last-quoted paragraph of the agreement, the action provided as follows:

> [O]nly so much of the sentence as provides for a bad conduct discharge, 3 years confinement and reduction to E–1 is approved and will be executed; but *execution of that part of the sentence extending to confinement is suspended for 5 years, at which*

*time, unless the suspension is sooner vacated, this suspended part of the sentence will be remitted* without further action; and *the execution of that part of the sentence extending to a bad conduct discharge and reduction below the grade of E-4 is suspended until the occurrence of the following events, as agreed to by the accused in his pretrial agreement:* 1) the accused completes a program of alcohol abuse rehabilitation at the Sheppard Regional Hospital, *2) the accused, at his own expense, completes a program of sexual offender treatment at a facility approved by the convening authority's staff judge advocate,* and 3) the accused pays restitution to the victim in the sum of $3000.00, *at which time, unless the suspension is sooner vacated, this suspended part of the sentence will be remitted* without further action.

(Emphasis added.)

Spriggs had become retirement-eligible on November 1, 1991; indeed, his active duty had been extended involuntarily because of the allegations that formed the basis of this court-martial. He was not placed on the retirement list even after the convening authority had signed his action, however; instead, on the same day of his action, the convening authority served Spriggs with a letter placing him on involuntary appellate leave, as follows:

1. You are hereby required, under Article 76a, Uniform Code of Military Justice (UCMJ), to take leave pending completion of appellate review of your conviction by court-martial, as identified below....

\*     \*     \*

3. If you have no accrued leave, the entire period of required leave will be unpaid leave.

*But see* Art. 76a, UCMJ, 10 USC § 876a ("[A]n accused who has been sentenced by a court-martial may be required to take leave pending completion of action under this subchapter if the sentence, as approved ... [by the convening authority], includes an unsuspended dismissal or an *unsuspended* dishonorable or bad-conduct discharge...." (Emphasis added.)).

Thus, Spriggs found himself between the proverbial rock and a hard place. The rock: The action obligated him to pay from his own pocket the cost of his rehabilitation program; the program was of indeterminate length under the terms of the agreement but, according to a letter from Burks that was considered during the vacation proceedings, might well last up to *5 years* for the treatment phase and *10 more years* for the follow-up phase. The hard place: For the duration of that suspension—again, possibly for as long as *15 years*—Spriggs would not receive any active-duty pay, apparently would not be placed on the retirement list, and would be handicapped in his effort to seek civilian employment by the fact that he had no discharge at all from his military service. *Cf. Lemoine v. Baker,* 36 MJ 86 (CMA 1992) (summary disposition) (Where inactive reservist was called to active duty for court-martial, sentenced to punitive discharge but no confinement, then placed on involuntary appellate leave which prevented him from resuming his civilian employment, the Court noted: "In neither the Government's answer nor at the oral argument ... has cause been shown to warrant involuntary appellate leave under Article 76a; at the same time, that status works a hardship on appellant by effectively precluding his return to his civilian job and denying him active-duty pay, pending his appeal under Article 66, UCMJ, 10 USC § 866.").

B

The record of the vacation proceedings indicates that Spriggs attended sessions of Mr. Burks' sex offenders' program on May 7 and on June 3 and 24, 1992, but that his financial condition hampered his continuation of the program. Burks testified that, when Spriggs "indicated that the dilemma that he had was a financial issue. I indicated to Mr. Spriggs that I was not willing to provide the lengthy and involved therapy free of charge, and that he was going to have to make some sort of arrangement."

The uncontroverted evidence presented at the vacation proceedings reflects that Spriggs actively sought civilian employment

after he was placed on involuntary appellate leave, but he had substantial difficulty landing a job without a discharge certificate. After 5 months of looking, he finally was hired to deliver pizzas at an hourly wage rate of $4.00. The evidence reveals a picture of continuingly deteriorating financial and related living conditions for Spriggs and his family that included loss of the family house, eviction from their apartment, residence in the parsonage of their church, food provided by the church, etc.

He continued all the while to make the required payments toward the $3,000.00 restitution, but he dropped out of the sex offenders' program. As a result, he was recalled from appellate leave for purposes of a hearing to determine whether the suspended execution of his sentence should be vacated due to his failure to meet that condition. *See* Art. 72, UCMJ, 10 USC § 872; RCM 1109. On the basis of the hearing, the convening authority did vacate the suspension on June 21, 1993, and Spriggs promptly was placed in confinement.

When Spriggs sought extraordinary relief from the decision to vacate the suspension, the Court of Military Review echoed the views of the hearing officer and of the staff judge advocate when it wrote:

> Petitioner argues he made a good faith effort to participate in the sex offender program but was not able to continue because of his financial difficulties. It is clear from the evidence presented at the Article 72 hearing petitioner was having a difficult time financially. However, it is equally clear the decision to vacate petitioner's suspended sentence was based on

his failure to either continue treatment or arrange with the staff judge advocate for some alternative treatment, rather than his inability to pay for treatment.

Unpub. op. at 2.

When the Court of Military Review denied Spriggs' petition,[1] he appealed that decision to this Court. After benefit of briefs from both parties and oral argument, this Court issued an Order Pendente Lite on March 16, 1994, directing Spriggs' release "from all confinement forthwith" and staying execution of any other element of Spriggs' sentence pending further decision of this Court. 39 MJ 429.

## II

### A

■ It is arguable from the record of Spriggs' court-martial, as well as from all documents relating to the pretrial agreement, that the parties contemplated that all of the enumerated conditions would apply to suspension of all elements of Spriggs' sentence. It is equally clear, however, that that is not what the convening authority ordered in his post-trial action.

As we observed in our Order Pendente Lite, the action suspended the adjudged confinement unconditionally[2] except that it was to be for a period of 5 years. We note that the action further states that, "at which time, unless the suspension is sooner vacated, this suspended part of the sentence will be remitted without further action...." Following this provision, the action then suspended execution of the bad-conduct discharge and the

---

1. This action was taken based on the following statement in the opinion denying extraordinary relief: "Pursuant to a pretrial agreement, the convening authority suspended execution of the bad-conduct discharge, the confinement and reduction below the grade of E-4 upon successful completion of certain specified conditions." Unpub. op. at 1. Incredibly, the Court of Military Review had summarized the suspension in its decision affirming the findings and sentence as follows: "[W]ith confinement suspended for five years and with bad-conduct discharge and reduction below the grade of E-4 suspended pending fulfillment of specific conditions concerning treatment and restitution."

2. Even though no condition was stated expressly, RCM 1108(c), Manual for Courts–Martial, United States, 1984, imposes one as a matter of law: "Unless otherwise stated, an action suspending a sentence includes as a condition that the probationer not violate any punitive article of the code." The pretrial agreement limits this condition to an "*offense that is punishable under the* UCMJ by confinement in excess of one year." It applies even though not included in the action. This condition, however, is not an issue in this case.

reduction in grade below E–4, conditioned on fulfillment of the the same "events" that were the first three enumerated conditions in the pretrial agreement, "at which time, unless the suspension is sooner vacated, this suspended part of the sentence will be remitted without further action." (There is no reference in the post-trial action to the pretrial agreement's fourth condition.) Thus, the action included two entirely separate and severable suspension provisions, each fully independent of the other even down to the provision for automatic remission.

We are unsure why the convening authority applied his conditions only to the punitive discharge and reduction in grade and not to the confinement. We are sure, though, that he did do so! We recognize that the pretrial agreement itself, the providence inquiry during which it was discussed, and the copy of the terms and conditions of the suspension that was served on Spriggs' after the action, see RCM 1108(c), purport to apply the conditions to all elements of the sentence, including confinement. We are not at liberty, however, to ignore the plain and unambiguous language of the convening authority's action, which is the only legally operative document that implements his decision.

In this light, vacation of suspension of execution of the confinement on the ground that Spriggs had violated one of the conditions that did not apply to that element of the sentence was unlawful. Accordingly, the vacation of suspension of the portion of the sentence to confinement is void.

### B

█ Left to consider is the matter of the suspension of execution of the punitive discharge and the reduction in grade. The hearing officer, the staff judge advocate, and the Court of Military Review all expressed essentially the same rationale to justify vacating this aspect of the suspension: Spriggs' failure to remain in Mr. Burks' program and his failure to approach the staff judge advocate about some "equivalent" program once it became clear that he could not afford to pay Mr. Burks. As quoted earlier, the phrasing of this sentiment by the Court of Military Review was that "the decision to vacate petitioner's suspended sentence was based on his failure to either continue treatment or arrange with the staff judge advocate for some alternative treatment, rather than his inability to pay for treatment." Unpub. op. at 2.

In the context of the pretrial agreement itself, however, we cannot appreciate the logic of this reasoning. The agreement permitted Spriggs and the staff judge advocate to agree on a program "equivalent" to that offered by Mr. Burks if for some unstated reason the latter was not satisfactory. It did not, however, provide any alternative to Spriggs' explicit obligation under the agreement to pay the cost himself of whatever program in which he enrolled. In fact, the language of the agreement in this connection—that is, that the program was to be completed "without use of Air Force funds"—would appear even to preclude enrollment in an Air Force-sponsored program.

Petitioner's strapped financial condition following his suspension has not been challenged at any stage; indeed, the earlier-quoted passage from the decision of the Court of Military Review expressly acknowledged it. It does not seem entirely clear that Spriggs reasonably should have surmised from the language of the action that approaching the staff judge advocate would have offered any relief from his dilemma of impecuniousness.

Here, however, we do not have to decide whether the evidence suggests that Spriggs could have been more aggressive in some respect in his efforts to reconcile his financial plight with his obligation under the action. Neither do we have to decide whether there is any legal impediment to the Government's vacating the suspension if the reason for his failure was financial inability. Instead, we conclude that, under the unique combination of several factors in this case, a suspension that was conditioned on an event that might well not have occurred for up to 15 years (completion of a sex offenders' program of treatment and follow-up) was for an "unreasonably long" period of time within the meaning of RCM 1108(d).

In the months following the suspension of his sentence, Spriggs struggled financially merely to afford his family food and shelter—and at certain times could not have provided these essentials except for the charity of his church. In no small way, responsibility for this financial plight lay at the doorstep of the Government. The convening authority placed Spriggs involuntarily on appellate leave, purporting to rely on the authority of Article 76a of the Code; yet that statutory provision by its own terms does not authorize involuntary appellate leave in the face of a sentence that includes a *suspended* punitive discharge, like Spriggs had. The Government argues in its brief that it was forced to this step as a practical matter: "Petitioner had to be maintained on active duty status for the Government to maintain some leverage on him while he was completing the conditions subsequent" in the action. Govt. Answer at 4–5. This explanation wholly ignores the fact that the Government could have maintained the same "leverage" either by retaining Spriggs in an active-duty-pay status or by placing Spriggs on the retirement rolls, for which he was eligible, and recalling him if necessary for any ensuing vacation proceeding. *See* Art. 2(a)(4), UCMJ, 10 USC § 802(a)(4).

Without a discharge from his military service, Spriggs faced the not-unusual difficulty of obtaining civilian employment. His only "success" after months of financial turmoil was a pizza-delivery job at $4.00 per hour. Denied active-duty pay, denied retired pay, and effectively denied an opportunity for meaningful civilian employment without a discharge from the military, Spriggs nonetheless was supposed to pay the cost of the required rehabilitation program. *And all this for an indeterminate period of time that might well have been for as long as 15 years!* Under these circumstances, the suspension violated RCM 1108(d) as being for an "unreasonably long" period of time.

### III

Thus, regarding the suspended execution of this aspect of Spriggs' sentence, two concerns exist: First, one of the conditions could not be fulfilled until exhaustion of an indeterminate period of time that might well be as long as 15 years; second, during that time, Spriggs was obligated to pay for the rehabilitation program himself but at the same time was severely handicapped in his practical ability to earn income—in large part due to the Government unlawfully ordering him into involuntary appellate leave. Since vacation of suspension of this part of the sentence was premised on a violation of the condition which we hold violated RCM 1108(d) and since Spriggs' violation in large part was a product of the convening authority's ordering Spriggs into involuntary appellate leave in violation of Article 76a, we hold that the order vacating the suspension of execution of the bad-conduct discharge and reduction in grade below E–4 cannot stand.

None of this, of course, suggests that the conditions themselves are improper. Indeed, the efforts of the parties to creatively and effectively address the best interests of the individual accused and of society in a meaningful way is commendable. The unreasonably long and open-ended period of time for completion of one of the conditions, however, must and can be remedied.

Elsewhere in the agreement, dealing with the condition that was peculiarly relative to suspension of the confinement, the parties revealed a notion of mutual assent that suspension for a period of 5 years was reasonable and acceptable. Without intending ourselves to offer a view one way or the other, we will accept that period of time as the outermost period of suspension of the bad-conduct discharge and reduction in grade below E–4 during which Spriggs must participate satisfactorily and progress in an acceptable sex offenders' rehabilitation program.

### IV

The writ-appeal petition is granted. The decision of the United States Air Force Court of Military Review on application for extraordinary relief is reversed. The convening authority's order vacating suspension of execution of Spriggs' sentence is set aside.

Extraordinary relief is granted as follows: First, no convening authority may apply the

conditions on suspension to the confinement element of the adjudged sentence.

Second, the period of suspension of the punitive discharge and reduction in grade, during which Spriggs is required to participate satisfactorily in an acceptable sex offenders' rehabilitation program, is limited to 5 years.

Third, involuntary appellate leave may not be applied to Spriggs so long as his sentence includes a *suspended* punitive discharge.[3]

Fourth, a decision, if any, to vacate the suspension must be based on some future failure by Spriggs to comply with the terms of suspension until May 13, 1997.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

COX, Judge (concurring):

I agree with the majority opinion. Particularly, I agree that innovative pretrial agreements must be designed so that there is a reasonable, attainable, and determinable time for performance. As admirable as was the intent of the parties here, the agreement was definitely ambiguous as to the time for performance.

As an additional basis for granting appellant relief, I am also of the opinion that neither the convening authority, nor the United States Air Force Court of Military Review gave appropriate consideration to appellant's total financial status in determining whether he violated the terms of the agreement, but focused only on his inaction in tending to the mental-health treatments. I would apply the same standards articulated in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), concerning enforcement of fines subject to other terms and conditions of suspended sentences which require financial ability in order to comply. *United States v. Tuggle*, 34 MJ 89 (CMA 1992). There are two analytical requirements which must be met prior to vacating a suspended sentence. RCM 1113(d)(3), Manual for Courts–Martial, United States, 1984. First, the fact that "the accused has made good-faith efforts to" comply but has not done so because of indigence. Second, "that there is no other punishment adequate to meet the Government's interest in appropriate punishment." *Id.* To me, this requires some effort by both appellant and *the Government* to resolve the problem. *See United States v. Tuggle, supra* at 93.

3. Of course, we do not purport to limit any other, lawful option available to the convening authori-  ty regarding Spriggs' military status.