UNITED STATES, Appellee,

v.

**Johnathan W. MITCHELL, Private,
U.S. Marine Corps, Appellant.**

No. 97–0935.
Crim.App. No. 95–2031.

U.S. Court of Appeals for
the Armed Forces.

Argued March 4, 1999.

· Decided Sept. 27, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, CRAWFORD, and EFFRON, JJ., joined. SULLIVAN, J., filed a concurring opinion.

For Appellant: *Lieutenant Dale O. Harris,* JAGC, USNR (argued); *Lieutenant Lisa C. Guffey,* JAGC, USNR, *Lieutenant E.K. Rubiella,* JAGC, USNR, and *Johnathan W. Mitchell* (Pro se).

For Appellee: *Major Mark K. Jamison,* USMC (argued); *Colonel Kevin M. Sandkuhler,* USMC, *Commander D.H. Myers,* JAGC, USN, and *Lieutenant Janice K. O'Grady,* JAGC, USNR (on brief); *Colonel Charles Wm. Dorman,* USMC, and *Lieutenant Commander Paul Jones,* JAGC, USNR.

Judge GIERKE delivered the opinion of the Court.

This case involves the question whether a convening authority lawfully vacated a suspended sentence based on appellant's failure to make full restitution as required by a pretrial agreement.[1] For the reasons set out

1. This Court granted review of the following issue:
   WHETHER REVOCATION OF APPELLANT'S SUSPENDED CONFINEMENT FOR FAIL-

URE TO MAKE FULL RESTITUTION WITHIN A YEAR OF THE ANNOUNCEMENT OF FINDINGS WAS LAWFUL ABSENT EVI-

below, we hold that the convening authority's action in this case was lawful.

Appellant has two convictions by general courts-martial. This case involves the suspension of a portion of the punishment imposed by his second court-martial and the subsequent vacation of that suspended punishment.

At his first general court-martial, on October 7, 1986, appellant was convicted of an unauthorized absence and nine specifications of bad checks, in violation of Articles 86 and 123a, Uniform Code of Military Justice, 10 USC §§ 886 and 923a, respectively. The approved sentence provided for a bad-conduct discharge, confinement for 18 months, partial forfeiture of pay for 18 months, and reduction to the lowest enlisted grade. The confinement in excess of 13 months was suspended for 12 months from the date of trial.

After appellant was released from confinement and placed on appellate leave pending completion of appellate review of his first court-martial conviction, he cashed over $30,-000 in bad checks. Some were drawn on his depleted bank account. Others were forgeries, written on the account of Carlos Rodriguez, whose identification card appellant had altered. Appellant was apprehended and confined in the Navy brig at Yokosuka, Japan. He escaped from the brig and remained absent for about 5½ years, until customs agents apprehended him on May 27, 1993, as he was entering the United States from Canada in Buffalo, New York.

Appellant was then charged with desertion, escape from confinement, forgery, bad checks, wrongful possession of a fraudulent identification card, and tampering with an identification card, in violation of Articles 85, 95, 123, 123a, and 134, UCMJ, 10 USC §§ 885, 895, 923, 923a, and 934, respectively. The charges were referred to a general court-martial.

Before his second general court-martial convened, appellant negotiated a pretrial agreement in which he offered to plead guilty

DENCE AND FINDINGS THAT HE WAS RESPONSIBLE FOR THE FAILURE.

and to make full restitution for the bad checks. In return, the convening authority agreed to suspend any confinement in excess of 60 months and to suspend any fine for the period of confinement plus 12 months from appellant's release from confinement. The pretrial agreement includes the following restitution provision:

That I [appellant] agree to make full restitution for the checks identified in the charges and specifications in the amount specified below [$30,733.62]. That I will make restitution before the one year anniversary date on which findings are announced. I understand and agree that restitution is a specific condition I have offered to induce the convening authority into accepting the sentence limitations of this agreement. I also represent to the convening authority that I have the financial resources and am able to make full restitution. I understand that my representation is a material part of this agreement. I understand and agree that if full restitution is not made before the one year anniversary date on which findings are announced, in the amount specified below, that the convening authority may conduct a vacation hearing in accordance with Article 72 of the Uniform Code of Military Justice and Rule[ ] for Courts–Martial 1109, Manual for Courts–Martial (1984), to determine if this condition has been met. I understand that I have the burden to prove full restitution has been made.

The second general court-martial convicted appellant, in accordance with his pleas, of the offenses set out above.[2] During the sentencing hearing, appellant made an unsworn statement in which he described his activities during his period of absence. He described a "securities business that [he] established, founded, created at home in Nassau, in the Bahamas." He also described a car rental business in England. He suggested, without saying so specifically, that these two enterprises were successful, growing businesses. He unequivocally stated that the combination

2. Appellant was found not guilty of desertion but guilty of the lesser-included offense of unauthorized absence.

of these business assets and money in bank accounts was sufficient to make restitution for all the bad checks.

The court-martial sentenced appellant to a dishonorable discharge, confinement for 10 years, and total forfeitures. In accordance with the pretrial agreement, the convening authority approved the sentence but suspended confinement in excess of 60 months for the period of confinement plus 12 months from the date of release from confinement. The convening authority also reduced the total forfeitures to forfeiture of $543 pay per month upon appellant's release from confinement.

On November 28, 1994, appellant requested a 3-month extension of the period for making restitution. On December 20, 1994, the convening authority denied the requested extension but agreed not to vacate the suspension of confinement until the date of the convening authority's action.

On February 10, 1995, the staff judge advocate (SJA) advised the convening authority that he was not bound by the agreement to suspend the confinement because appellant had failed to make the promised restitution. The convening authority finally took action on May 5, 1995, 17 months after the trial, and suspended confinement in excess of 60 months in accordance with the pretrial agreement. However, because appellant had failed to make restitution as promised, the convening authority ordered a vacation hearing in accordance with Article 72, UCMJ, 10 USC § 872.

The vacation hearing was conducted on June 5–8, 1995. Appellant declined to have detailed military counsel for the first 2 days of his hearing and insisted on proceeding *pro se*. For the 3d and 4th days of the hearing, appellant requested and received detailed counsel to act as his "co-counsel." At the hearing, appellant asserted that when the pretrial agreement was negotiated, he believed he had the means to make restitution, but when he attempted to liquidate his overseas interests, he was unable to obtain sufficient funds to make full restitution. He made restitution in the amount of $4,102.28, far short of the $30,733.62 promised.

At the vacation hearing, appellant relied primarily on his own testimony to support his claim that he was indigent. He testified that at the time of his second general court-martial, his assets consisted of a vehicle worth $10,000–12,000, a bank account worth about $3,000, and "furnishings" worth about $4,000–6,000. Appellant testified that his car rental business and securities business were one-man operations that closed down when he was confined. They were seized by his creditors to satisfy outstanding debts. He testified that the bank applied the money in the bank accounts against his debts. He produced a letter from his sister corroborating his testimony that his car rental business was "now defunct." Finally, he produced his Ledger Brig Account, showing a zero balance. Appellant produced no documentary evidence showing the value of his assets at the time of trial. He presented no documentary evidence showing the seizure of his businesses and bank accounts or the disposition of his assets.

The hearing officer contacted appellant's father in Nassau and interviewed him by telephone. Appellant's father testified that he was unable to financially assist appellant, and that appellant's creditors were trying to collect some of appellant's debts from him. Appellant's father told the hearing officer that appellant owed $5,000 to Buckingham University, in England, where he studied law, and about $30,000 to American Express.

The hearing officer concluded that appellant "did not make a sufficient bonafide effort to acquire funds in light of the resource alternatives he represented to the Government in his pretrial agreement." He also concluded that appellant "was less than straightforward with the Government in representing the status of his finances."

The hearing officer recommended that appellant be credited with 8 months against confinement for his partial restitution. On September 6, 1995, the SJA recommended that the suspended sentence be vacated. The convening authority rejected the hearing officer's recommendation for partial credit and vacated the suspended confinement in a supplemental order dated September 8, 1995.

The Court of Criminal Appeals affirmed the findings and sentence and held that the convening authority's vacation action was lawful. 46 MJ 840 (1997).

Appellant now asserts that the convening authority's failure to honor the pretrial agreement violates public policy because he is indigent and unable to make restitution as promised, citing *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The Government asserts that appellant's failure to make restitution as promised authorized the convening authority to vacate the suspended sentence. The Government argues that *Bearden* is not applicable to this case because it involved a fine imposed as a sentence instead of a plea agreement bargained for by appellant.

Restitution is a permissible term of a pretrial agreement. *See* RCM 705(c)(2)(C), Manual for Courts–Martial, United States (1998 ed.);[3] *United States v. Olson,* 25 MJ 293 (CMA 1987). In *Bearden, supra* at 672, 103 S.Ct. 2064, the Supreme Court addressed both fines and restitution, holding as follows:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.

In *United States v. Tuggle,* 34 MJ 89, 92 (1992), this Court held that imposing confinement as a sanction for failure to pay a fine

violates the Due Process Clause if the probationer has made good–faith efforts to pay but cannot because of indigency. With respect to fines, *Bearden* is incorporated in RCM 1113(d)(3). *See* Drafters' Analysis of RCM 1113(d)(3), Manual, *supra* at A21–86. Both *Bearden* and *Tuggle* involved confinement imposed as part of a sentence, rather than a negotiated plea agreement.

In *Spriggs v. United States,* 40 MJ 158 (1994), this Court considered a writ-appeal in which a probationer had failed to remain in a sex–offender program at his own expense, because of indigence. This Court considered the probationer's indigence but decided that it was not necessary "to decide whether there [was] any legal impediment to the Government's vacating the suspension if the reason for his failure was financial inability." Instead, this Court held that completion of the sex–offender program could have taken up to 15 years, and that suspension for this period was an "unreasonably long" period of probation, which is prohibited by RCM 1108(d). *Id.* at 162. In a separate concurring opinion, then-Judge Cox opined: "I would apply the same standards articulated in *Bearden* ... concerning enforcement of fines subject to other terms and conditions of suspended sentences which require financial ability in order to comply." *Id.* at 164.

■ The drafters of RCM 705(c)(2)(C) recognized that "[e]nforcement of a restitution clause may raise problems if the accused, despite good faith efforts, is unable to comply." Drafters' Analysis of RCM 705(c)(2)(C), Manual, *supra* at A21–39. To date, neither this Court nor the Supreme Court has squarely addressed the question whether the suspension of a sentence may be vacated for failure to make restitution, where restitution was voluntarily proposed by an accused in a pretrial agreement as a condition of suspension, and where the accused was unable to carry out his part of the bargain.

Two service courts have addressed this issue. In *United States v. Foust,* 25 MJ 647,

---

**3.** The current version of RCM 705(c)(2)(C) is unchanged from the version in effect at the time

of appellant's trial.

649 (1987), the Army Court of Military Review distinguished between restitution imposed as part of a sentence and restitution required by a pretrial agreement. It held that a pretrial agreement requiring restitution could be enforced even if the accused, acting in good faith, was unable to make restitution through no fault of his own. The court explained its rationale as follows:

> A promise to provide restitution is not the same as an adjudged fine, nor is it the same as non-negotiated restitution as part of an adjudged sentence. We emphasize that a provision for restitution in a pretrial agreement is a provision to which an accused must freely agree. Indeed, here appellant is the one who offered restitution as part of the agreement.
>
> .... To ensure the integrity of the trial process, when an accused voluntarily offers and agrees to a restitution provision in a pretrial agreement, it must be enforced.

*Id.* at 649. The Navy–Marine Corps Court of Criminal Appeals cited *Foust* and adopted its rationale in this case. 46 MJ at 842. Neither this Court nor the service courts have addressed the question whether *Bearden* and *Tuggle* apply if the appellant misrepresented his financial ability in order to obtain the pretrial agreement.

The underlying premise of the Supreme Court's decision in *Bearden* and our decisions in *Tuggle* and *Spriggs* is that the probationer is unable, through no fault of his own, to comply with the terms of probation. Consistent application of this premise requires that a probationer who cannot comply with a pretrial agreement through his own fault not be permitted to use indigency to excuse his failure to comply with the agreement. The linchpin of the analysis under *Bearden, Tuggle,* and *Spriggs* is good faith.

In this case, appellant provided sketchy evidence of his net worth at the time of his court-martial and incomplete evidence at his vacation hearing. Even if his trial testimony about the value of his assets is accepted at face value, *i.e.,* a vehicle worth $12,000, a bank account worth $3,000, and "furnishings" worth $4,000, these assets were inadequate to make full restitution. At trial, he presented no bank records, tax records, or income and earnings statements to document the value of his assets. He did not explain how he expected his one-man businesses to continue operating while he was confined.

At his vacation hearing, appellant testified that all the assets were seized to pay debts, suggesting that at the time of trial his businesses were heavily indebted. He presented no documentary evidence to show whether there were any assets remaining after the debts were satisfied and, if so, what happened to those assets.

We hold that the Due Process Clause does not protect an accused who offers to make full restitution, knowing full well that he cannot; nor does it protect an accused who fails to take timely and reasonable steps to safeguard his assets so that he can make restitution as promised. Based on the record before him, the convening authority was justified in concluding that appellant either bargained in bad faith by misrepresenting his net worth, or he failed to take reasonable steps to safeguard his assets and convert them to cash after he was convicted and sentenced. The record reflects that appellant either made a bargain that he knew he could not keep, or he allowed his assets to be dissipated instead of taking prompt and reasonable measures to secure them. Either alternative constitutes bad faith. Accordingly, we conclude that the convening authority lawfully vacated appellant's suspended sentence.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring):

"A deal is a deal" sums up this case. Appellant failed to live up to his pretrial agreement by paying full restitution. Therefore, the convening authority lawfully vacated appellant's suspended sentence.