UNITED STATES, Appellee,

v.

Steven P. OLSON, Staff Sergeant, U.S. Air Force, Appellant.

No. 54,303.
ACM S26706.

U.S. Court of Military Appeals.

Dec. 14, 1987.

For Appellant: *Donald G. Rehkopf, Jr., Esq.* (argued); *Colonel Leo L. Sergi* and *Lieutenant Colonel Patrick C. Sweeney.*

For Appellee: *Major Kathryn I. Taylor* (argued); *Colonel Kenneth R. Rengert* and *Major David F. Barton* (on brief); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to his pleas, appellant was convicted by a special court-martial of presenting false travel vouchers in his name totaling $646.50, presenting a false travel voucher of another airman for $474.44, and obstructing justice, in violation of Articles 132 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 932 and 934, respectively. The sentence as adjudged and approved was a bad-conduct discharge, a fine of $1,000.00, and reduction to the grade of E–2. The Court of Military Review affirmed in a per curiam opinion. The issue specified by this Court was:

WHETHER THE GOVERNMENT COMPLIED WITH THE PRETRIAL AGREEMENT, AS EXPLAINED AT TRIAL.

I

Originally, it had been alleged in one specification that Olson had submitted false travel vouchers totaling $1,806.00 and in a second specification that he had been an accomplice in the presenting of another voucher for $1,121.47. However, later the two specifications were amended to the lesser amounts of which he was found guilty. The reduction in amount apparently resulted from a dispute as to the correctness of certain vouchers which had been included in the computations on which the specifications had originally been based.

Subsequently, appellant entered into a pretrial agreement whereunder he "agree[d] ... to make restitution to the UNITED STATES of any monies owed by him as a result of the charges against him." Pursuant to that agreement, Olson paid $646.50—the amount alleged in the false-claim specification as amended. During the providence inquiry, the military judge specifically asked Olson whether he "wish[ed] to take issue with that amount"; and there was a negative response. Subsequently, defense counsel asked whether appellant had "made restitution in this case" and had "basically paid back the Air Force the extra money that ... [appellant] got"; and Olson gave an affirmative answer. In his argument on sentence, trial counsel conceded that appellant had "made restitution." Later, when the military judge was discussing the terms of the pretrial agreement, he commented that "[i]t is my perception, based on what I have heard that the second condition has been met," whereupon both civilian defense counsel and trial counsel stated their concurrence.

Soon after trial, the finance office administratively collected $1,107.07 from appellant and advised him that he could contest this recoupment action through administrative channels or by filing a claim with the General Accounting Office.[1] It is unclear from the record whether this sum was collected with respect to travel vouchers which had been included in computing the amount of the false claim with which Olson initially was charged or whether there was some other reason for this action. Upon becoming aware of the recoupment, appellant protested vigorously; and he unsuc-

1. Administrative recoupment of pay is separate from and not based upon criminal proceedings under the Uniform Code of Military Justice. *See* para. 11–22f, AFR 177–101 (1 Feb 84).

cessfully requested both the military judge and the convening authority to order a hearing as to the providence of his guilty pleas in light of this allegedly unanticipated subtraction from his pay.

On appeal, appellant claims that the pretrial agreement—together with his payment of the $646.50 and the ensuing acknowledgment by trial counsel that the restitution requirement of the pretrial agreement had been met—constituted satisfaction of any claim that the Government had against him with respect to any false travel vouchers. Moreover, appellant contends that, since the Government did not comply with the pretrial agreement, he now is entitled to have his pleas of guilty set aside.[2]

## II

In recent years, there has been increased concern for victims of crime. *See, e.g., United States v. Solorio,* 21 M.J. 251, 255 (C.M.A.1986), *aff'd,* —— U.S. ——, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). Congress and State legislatures have sought to guard more fully the rights of victims.[3] To help achieve this goal, restitution for a victim of crime often is imposed as a condition of probation or a suspended sentence. Thus, 18 U.S.C. § 3651 provides that, as a condition of probation, "the defendant ... [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." In accord with a liberal construction of this statutory authority, a federal district judge may require

> restitution in the amount of actual damage and loss to the victim, even if that exceeds the amount in the counts pleaded to, when (a) the defendant has obtained the proceeds as part of an ongoing scheme to defraud which extends over time, and (b) the amount of the damages to the victim has been established with

specificity and admitted to by the defendant in the indictment, the plea agreement, and plea and presentence proceedings.

*United States v. Davies,* 683 F.2d 1052, 1054 (7th Cir.1982); *see also United States v. Suter,* 755 F.2d 523, 526–27 (7th Cir.), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

In support of its interpretation of 18 U.S.C. § 3651, the Court of Appeals reasoned in *Davies* that limiting restitution to the victims of those alleged offenses as to which the defendant pleaded guilty

> would severely restrict plea-bargaining in multicount indictment cases, because the Government would be prohibited from entering plea bargains as to some counts if that would eliminate restitution for further illegal proceeds, even though receipt of such proceeds was acknowledged by the defendant, as here. It would also require the Government to obtain indictments with hundreds of counts in cases ... where the scheme is one of widespread but individually small acts of fraud. Finally, it would not comport with the rehabilitative purpose of restitution as a condition of probation, which is to foster a defendant's acceptance of responsibility for unlawful acts.

683 F.2d at 1055.

The Manual for Courts-Martial adverts to restitution in connection with pretrial agreements. According to R.C.M. 705(c)(2)(C), Manual for Courts-Martial, United States, 1984, a pretrial agreement may include "[a] promise" by the accused "to provide restitution." The Analysis of this Rule, page A21–35, states that authorization of a restitution clause "is based on *United States v. Callahan,* 8 M.J. 804 (N.C.M.R.1980); *United States v. Brown,* 4 M.J. 654 (A.C.M.R.1977)." Since the provi-

---

**2.** Appellant also complains that neither the military judge nor the convening authority granted his request for a hearing to reconsider the providence of his pleas of guilty and to determine whether he was entitled to withdraw the pleas because of the Air Force's deduction from his pay.

**3.** 21 M.J. 251, 255; *see also* Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248.

sion for restitution in R.C.M. 705(c)(2)(C) is even less restrictive than that in 18 U.S.C. § 3651 and does not purport to be limited in any way to "loss caused by the offense for which" the accused is entering a guilty plea, we conclude that in court-martial proceedings a pretrial agreement may call for restitution by the accused of any loss caused by misconduct related in any way to any offense for which the accused has been charged—regardless of his plea thereto.[4]

■ In this case, the Government was the victim of the fraud committed by Olson. We see no reason why the Government in its capacity as a victim is precluded in any way from receiving the benefit of a plea-bargain requirement that the accused make "restitution." Likewise, the scope of the restitution need not be limited to the offenses to which the accused is pleading guilty. The parties can also—at the very least—include losses to the Government resulting from any related offenses or misconduct. Thus, appellant and the Government were free to enter into an agreement which required Olson to make restitution not only for the loss to the Government resulting from presentation of the false travel vouchers which were the subject of the charge to which he pleaded guilty but also with respect to other false claims which the Government was not pursuing at trial.

It is unclear, however, if the language used in the pretrial agreement—"any monies owed by him as a result of the charges against him"—was intended to produce this result. Under one interpretation, these words could be read to mean restitution only with respect to charges pending against Olson at the time of trial. Under a broader interpretation, the obligation to make restitution would include monies owed by Olson to the Government with respect to allegedly false claims that were the subject of charges that had been previously dismissed, withdrawn, or amended.

■ The Manual for Courts-Martial also contemplates that the military judge shall inquire to assure "[t]hat the accused understands the [pretrial] agreement; and [t]hat the parties agree to" its terms. R.C.M. 910(f)(4). *See also* R.C.M. 910(h)(3). Even after sentence is announced, this inquiry must be pursued as to any parts of a pretrial agreement not previously disclosed to the military judge. "If the military judge determines that the accused does not understand the material terms of the agreement, or that the parties disagree as to such terms, the military judge shall conform, with the consent of the Government, the agreement to the accused's understanding or permit the accused to withdraw the plea." R.C.M. 910(h)(3). Thus, either the accused receives the benefit of the plea bargain which he thought he had entered or he is allowed to withdraw the guilty plea. *Cf. Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

■ In view of the ambiguous language in the pretrial agreement, a potential existed for misinterpreting its terms. Appellant's suggested construction of the condition as to "restitution" is not unreasonable. Seemingly, it was confirmed by all the participants in the trial.[5] Moreover, his prompt protest after the Air Force had deducted $1,107.07 from his pay and his request for a post-trial hearing tend to corroborate Olson's present assertions as to his understanding when he entered the pretrial agreement. Since neither the mili-

---

4. We need not consider at this time the extent to which a pretrial agreement proposed by an accused may properly provide for restitution of damages or loss having no relation whatever to the crime for which the accused is pleading guilty.

5. If the pretrial agreement calls for restitution, the judge should determine what is the amount which the accused must pay or how that amount is to be ascertained. Here, the military

judge attempted to perform this responsibility. He verified the amount to be recouped by the Government pursuant to the pretrial agreement; and he determined that this amount had already been paid. The prosecutor gave no indication that the Government planned to pursue any further action to secure payment from appellant; and indeed he confirmed that restitution had been made.

tary judge nor the convening authority granted the request for a post-trial hearing to determine what the parties had originally intended, the Government is not in a good position now to claim that appellant has misrepresented what was his understanding of the pretrial agreement.

If appellant did "not understand the material terms of the agreement" and if, thereafter, it was not conformed to his understanding, he is entitled to withdraw his guilty plea. R.C.M. 910(h)(3). We cannot dispute Olson's contention that his "restitution" obligation under the pretrial agreement was "material." At the time of trial he apparently was in desperate financial straits and considerable time had been expended in determining how much he owed the Air Force in connection with his false travel vouchers. To him, the $1,107.07 administratively collected by the Air Force was not inconsequential. Indeed, it was greater than the financial punishment—a $1,000.00 fine—to which the military judge sentenced him.

The Government's position is that the Air Force's recoupment action was independent of and collateral to the court-martial proceeding. As we are aware, an accused is not entitled to relief when, after pleading guilty, he discovers that there are unforeseen collateral consequences of his conviction. Thus, in *United States v. Bedania*, 12 M.J. 373 (C.M.A.1982), we denied relief to an accused whose guilty plea and subsequent conviction exposed him to the unexpected collateral consequence of an administrative discharge. *See also United States v. Suter, supra*, 755 F.2d 523 (a District Court did not abuse its discretion in refusing to allow withdrawal of a guilty plea by a defendant who apparently had been unaware of collateral consequences in the form of civil damages in related civil litigation).

Likewise, Olson would not be entitled to withdraw his guilty pleas merely because his conviction exposed him to consequences he never anticipated. Indeed, if the pretrial agreement had not dealt with "restitution," he would have no valid complaint, even if the Air Force's recoupment of the $1,107.07 was directly based on the conviction resulting from his guilty plea. *Cf. United States v. Bedania, supra.*

However, since the pretrial agreement did require Olson to reimburse the Air Force "any monies owed by him as a result of the charges against him," the situation is quite different. Instead of being collateral to the court-martial, the financial obligation to "make restitution" has been interjected into the criminal proceeding by the pretrial agreement and by the parties' interpretation of that agreement at the time of trial. This obligation has become a "material term" of the agreement; and the misunderstanding as to that term gives appellant the right to rescind the agreement.

Perhaps, trial counsel, the military judge, and the convening authority lacked the power to bind the Air Force as to the amount due from Olson and to preclude it from collecting overpayments that had been made to him. We realize that there are specified procedures for settling government claims for amounts owed to it. Moreover, those who deal with the Government are charged with notice of limitations on the authority of its agents; and they cannot plead estoppel against the sovereign. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). However, plea bargains in courts-martial are not governed by the technicalities of the law applicable to Federal commercial contracts. Instead, it is our view that, as far as appellant's pretrial agreement is concerned, the Manual for Courts-Martial gave him the right to withdraw his guilty pleas if he had a good-faith belief that he had fully settled his liability to reimburse the Government for overpayments and if this belief had induced appellant's entry of the pleas.

### III

In order to dispel any doubt as to appellant's understanding of the pretrial agreement, we could order a *DuBay* hear-

ing.[6]  However, we have concluded that such a hearing would be a waste of time, money, and effort, because it would be almost impossible for the Government to disprove appellant's claim as to his understanding of the pretrial agreement—a claim which on its face seems quite reasonable in light of the language of the pretrial agreement and the events at trial. Moreover, the Government can hardly complain if we accept Olson's representations as to his understanding, for he promptly requested a post-trial hearing when it could have been more readily provided, and his request was denied by the military judge and the convening authority.

We shall assume, therefore, that a meeting of the minds never occurred with respect to the restitution provision in the pretrial agreement. On that premise, appellant is entitled to have his pleas of guilty withdrawn or to have the agreement conformed, with the Government's consent, to appellant's understanding.

■ We suspect that the Government would prefer to have the pretrial agreement modified at this time to conform to Olson's alleged understanding, rather than have the pleas and the findings of guilty set aside, and then try the case on a contested basis. However, since this Court has no jurisdiction to adjudicate pay disputes and since determination of overpayments can be disposed of more efficiently by tribunals other than courts-martial, cf. Woodrick v. Divich, 24 M.J. 147 (C.M.A.1987), there are some practical problems in attempting to salvage the guilty pleas by now providing appellant the benefits for which he thought he had contracted.

Nonetheless, we shall attempt to fashion a remedy that will do justice to the parties. In this connection, we note that the financial punishment to which Olson was sentenced consisted of a $1,000.00 fine and no forfeitures. According to the Discussion in the Manual for Courts-Martial, "[a] fine normally should not be adjudged ... unless the accused was unjustly enriched as a result of the offense of which convicted." R.C.M. 1003(b)(3), Discussion. If the Government recouped from appellant the entire amount of money which he had obtained by means of false travel vouchers, then he was no longer unjustly enriched. However, unjust enrichment is not a legal requirement for a fine—especially since no forfeitures were adjudged—and no question seems to exist as to the legality of this portion of the sentence. Indeed, Olson made no attack on it during this appeal.

Although we have no statutory authority to review Air Force administrative action for collecting debts, we are empowered to review court-martial sentences. In this case, we believe this power can be exercised to carry out the intent of the pretrial agreement. In this connection, we observe that the amount of the fine ($1,000.00) is almost equivalent to the $1,107.07 which was collected administratively from the accused. If the fine is set aside, Olson will receive a financial benefit substantially equivalent to the amount of pay recouped administratively by the Air Force.

A difference of $107.07 would still remain between the amount collected by the Air Force and the amount of the adjudged fine; but in light of the seriousness of the offenses involved, it seems inconceivable that this difference would have affected appellant's decision to plead guilty. In short, Olson's financial position would be so close to that which he expected to occupy that, for purposes of determining the voluntariness of his guilty pleas, Olson can be considered to have received the benefit of his bargain.

In that event, the pleas and the findings of guilty based thereon can then be allowed to stand; and a rehearing will be unnecessary because appellant will have obtained substantial compliance with the pretrial agreement. Moreover, Olson will still be free to proceed in some other forum—such as the Board for the Correction of Military Records, 10 U.S.C. § 1552, or the Claims Court, 28 U.S.C. § 1491—which, more

---

6. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

readily than a court-martial, can determine if there were any underpayments or over-payments by appellant. *Cf. Woodrich v. Devich, supra.*

We set aside the fine solely as a means to provide appellant the benefit of his plea bargain—as required by R.C.M. 910(h)(3). Of course, it would be our intent and expectation that, in any recoupment proceedings undertaken by Olson in some other forum, the amount of the fine be treated as a credit or offset against any amount that otherwise might be due to appellant. Thus, he will not be able to obtain a double recovery.

Our remedy is predicated on the assumption that the Government would prefer to have the findings of guilty stand without a rehearing, rather than to have guilt determined at a new trial. If, however, our premise is erroneous, the Government may seek reconsideration of this decision with a view to having a rehearing on findings and sentence.

### IV

The decision of the United States Air Force Court of Military Review is affirmed except as to the fine of $1,000.00. The fine is set aside. If the fine has been collected from appellant, it will be restored to him forthwith.

Judge COX concurs.

Judge SULLIVAN did not participate.