# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

### UNITED STATES

v.

### Daniel R. PERRON
### Boatswain's Mate Second Class (E-5), U.S. Coast Guard

### CGCMS 24172

### Docket No. 1115

### 1 November 2001

Special Court-Martial convened by Commanding Officer, Enlisted Personnel, U.S. Coast Guard Academy, New London, Connecticut. Tried at New London, Connecticut, on 2 February 1999.

| | |
|---|---|
| Military Judge: | CDR Bryan D. Schroder, USCG |
| Trial Counsel: | LCDR Glenn M. Sulmasy, USCG |
| Detailed Defense Counsel: | LT Matthew T. Schelp, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCGR |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LCDR Chris P. Reilly, USCG |
| | LT Sandra J. Miracle, USCGR |

### BEFORE
### PANEL SEVEN
### BAUM, BRUCE, AND KILROY
Appellate Military Judges

BAUM, Chief Judge:

On 28 August 2000, this Court set aside the convening authority's action in this case and returned the record for corrective steps due to a failure of a material term of Appellant's pretrial agreement. *United States v. Perron*, 53 M.J. 774 (C.G.Ct.Crim.App. 2000). That term mandated disapproval of all adjudged forfeitures, and also required the convening authority to "pay the dependents of the accused," *id.* at 775, by waiving any forfeitures caused by Article 58, UCMJ. Appellant was sentenced to a bad conduct discharge, confinement for 90 days, and reduction to paygrade E-3, which the convening authority approved, and suspended in part, as required by the pretrial agreement. The purpose of the agreement's waiver-of-forfeitures provision was thwarted, however, when Appellant was placed in a non-pay status upon his confinement after trial, leaving him without pay to be forwarded to his dependents. The Coast Guard's pay center had determined that termination of Appellant's pay was required due to the expiration of his enlistment prior to confinement. When the pretrial agreement was formalized, and later at trial when Appellant pled guilty based on the agreement, the parties were unaware that Appellant would enter a non-pay status upon confinement. Because of Appellant's misunderstanding in this regard and the resultant failure

of the pretrial agreement, we determined that corrective action was required, either by setting aside the findings of guilty and the sentence or fashioning an appropriate alternative remedy. We set aside the convening authority's action and sent the record back to allow that officer to choose which action to take. In so doing, we suggested that disapproval of all confinement could be a possible alternative remedy, if, upon its disapproval, Appellant would be entitled to full pay for the period that he had been confined.

The convening authority has followed our suggestion and has returned the record to the Court with a new action approving only the bad-conduct discharge and reduction to paygrade E-3. Since the approved sentence does not include confinement, the pay center has determined that Appellant is entitled to pay for the period that he was incarcerated and has provided him with a lump sum of $3,184.90 as compensation for all pay and allowances for that period.[1] Despite this action, Appellant continues to assert that his pleas were improvident, contending that the payment he has now received is not an adequate remedy for the deprivation of funds from his dependents while he was confined. Appellant claims that the harm resulting from the earlier failure to compensate his dependents cannot be undone by belatedly paying him now. According to Appellant, such action does not make him whole even in a strictly financial sense, given the time value of money. He acknowledges the comment by Chief Judge Crawford in her concurring-in-the-result opinion in *United States v. Hardcastle*, 53 M.J. 299, 304 (2000), that the addition of interest might make someone in Appellant's situation whole, but asserts that there is no authority for the Coast Guard to provide interest on the money he has received. Moreover, in Appellant's view, any additional money that could result from disapproval of his paygrade reduction, while a potential substitute for lost interest, would not be an appropriate remedy "in light of the late date and the illaudable conduct of the original convening authority and his legal advisor." Appellant Br. at 7. According to Appellant, when the problem with the pretrial agreement "was brought to the convening authority's attention, while Appellant was still incarcerated and while it was easily possible to afford meaningful relief, the commander instead chose to engage in sophistry." Appellant Br. at 3.

Appellant's portrayal of the convening authority's conduct stems from actions taken after Appellant's pay status was discovered. Trial defense counsel informed the convening authority of the pay situation while Appellant was still in confinement and requested his immediate release. In our earlier opinion, we noted that such action would have ameliorated the financial condition of Appellant and his dependents either by restoring him to full duty with entitlement to pay or by allowing him to go on appellate leave and obtain gainful employment. The convening authority denied the requested release from confinement, opting instead to waive automatic forfeitures, knowing full well that the waiver would provide no practical benefit to Appellant and would in no way address the defect in the pretrial agreement. A convening authority's failure to take corrective action might be appropriate in a case where the terms of the pretrial agreement and the record of trial support the position that a promise to disapprove forfeitures and/or to waive forfeitures did not include an agreement to guarantee payment to dependents if the accused entered a no pay status. *United States v. Williams*, 55 M.J. 302 (2001). Such was not the case here, however, and we previously viewed the Government's contention that Appellant had received the benefit of his bargain as "disingenuous." 53 M.J. at 775. Appellant characterizes the convening authority's

---

[1] The Government's Motion to Attach Documents is granted. They reveal that the total underpayment was computed by the pay center as $4,157.60 of which $972.70 was withheld for federal and state taxes and that Appellant ultimately received $3,184.90.

conduct as "illaudable" and "engaging in sophistry." Whatever the characterization, we too decry the convening authority's inadequate actions after being informed that he could not effectively perform a material term of the pretrial agreement. Nevertheless, contrary to Appellant's view, the convening authority's missteps in this regard do not prevent us at this point from fashioning an appropriate alternative remedy, which may include the money Appellant has already received together with a substitute for interest.

Appellant contends that the appropriate remedy for him now is disapproval of the bad conduct discharge or, alternatively, setting aside the findings and sentence based on improvident pleas. This is the relief he asked for initially when the case was first before us. Arguably, it is inconsistent to claim that the pleas are improvident, while suggesting a remedy short of disapproval of the guilty pleas. In any event, by requesting disapproval of the bad conduct discharge, Appellant accepts the proposition that a remedy other than setting aside the findings and sentence may suffice to correct the failure of the pretrial agreement. Our higher court has told us that in an appropriate case an alternative remedy may be fashioned. *United States v. Mitchell*, 50 M.J. 79 (1999); *United States v. Olson*, 25 M.J. 293 (CMA 1987). Appellant maintains that the only satisfactory alternative remedy in his case is disapproval of the punitive discharge. We do not believe that we are bound by Appellant's wishes in fashioning an appropriate alternative remedy. Our authority in this regard should not be determined solely by what the Appellant finds acceptable. We have a duty to provide not only adequate relief to Appellant, but also relief that is fair to both Appellant and society.

While payment at this point can never be exactly the same as earlier payment to Appellant's dependents during his confinement, we believe it is close enough to the action promised in the pretrial agreement to constitute satisfaction of that agreement, particularly if further reduction of the sentence will allow for payment of additional money as a substitute for interest. Such may be accomplished by disapproval of Appellant's reduction to paygrade E-3. That action should result in the re-computation of pay owed at the previous E-5 grade. This difference in pay should exceed any reasonable interest calculation. Accordingly, the findings of guilty and the bad conduct discharge, as approved below, are affirmed, but the reduction to paygrade E-3 is set aside. All rights, privileges, and property of which Appellant has been deprived by virtue of the portion of the sentence that has been set aside will be restored.

BRUCE, Judge, concurs.

Kilroy, J. (Dissenting):

Appellant contends that his guilty pleas in this case were improvident, and remain so despite the corrective action taken by the convening authority pursuant to this Court's prior decision. I agree.

Not long ago, the law seemed clear that an appellant who had not received the benefit of his bargain was entitled either to have the material terms of the agreement conformed to his understanding or to withdraw his guilty plea. *United States v. Olson*, 25 M.J. 293, 296-97 (CMA 1987). Recently, however, our superior court has recognized the authority of the Courts of Criminal Appeals "under Article 66, UCMJ, 10 USC § 866(1994), to provide such additional relief—*e.g.*, with respect to the reduction in grade—as may be necessary" to provide an appellant "with the benefit of his bargain." *United States v. Mitchell*, 50 M.J. 79, 83 (1999). Fashioning such "appropriate alternative relief," *id.*, however, may be easier said than done.

Chief Judge Crawford provided her view of appropriate alternative relief in cases such as the one before us in her concurring opinions in *United States v. Williams*, 53 M.J. 293 (2000), and *United States v. Hardcastle*, 53 M.J. 299 (2000). Each of those cases involved an issue identical to the one before us – a plea alleged to be improvident because the appellant's enlistment expired, resulting in a no-pay status during confinement and essentially nullifying the convening authority's agreement to waive automatic forfeitures in favor of the appellant's dependents. In each of those cases, Judge Crawford concurred in the result, but only because the Government had conceded before the Court of Appeals of the Armed Forces that the pleas were improvident, and had recommended that the findings be set aside. Judge Crawford argued that the Government should have exercised "the option of making appellant whole in lieu of treating the plea as improvident," and that this could be accomplished "by paying him." *Williams*, 53 M.J. at 298.

In *Hardcastle*, Judge Crawford expounded on this proposal:

Both *Olson* and its purported progeny, *Mitchell*, are grounded on the precept that *if* or *when* an appellant does not receive the benefit of his bargain, the plea will be treated as improvident. Nothing in these decisions prohibits the Government from belatedly compensating an appellant to make him whole. Furthermore, nothing prohibits a lower court from ordering specific performance by the Government to ensure a service member gets that to which he or she is entitled.

When the misunderstanding in a pretrial agreement involves fiscal considerations, the better practice is to allow the Government the option of placing both parties in the respective positions for which they bargained. In this case, the Government could have paid appellant $400 per month for the number of months agreed upon, plus interest, and restored appellant to the position for which he freely and voluntarily bargained.

53 M.J. at 304 (emphasis in original).

In our prior review of the instant case, this Court adopted this reasoning (except that we did not add interest). We held that by disapproving all confinement (which Appellant had already served), after first ascertaining that this action would result in full pay for the period of confinement, the convening authority could "remedy the failure of the agreement." *United States v. Perron*, 53 M.J. 774, 777 (2000).

The problem with this approach is that it is founded in contract-law principles. *See Hardcastle*, 53 M.J. at 304. Analogies to contract law are entirely appropriate "when *interpreting* pretrial agreements." *United States v. Acevedo*, 50 M.J. 169, 172 (1999) (emphasis added). However, I have found no authority, other than the *Hardcastle* and *Williams* concurring opinions, to suggest that contract law principles apply when *fashioning a remedy* designed to salvage a plea that must otherwise be held to be improvident. "The defendant is entitled to withdraw his plea any time . . . if it was not entered voluntarily and knowingly. This obviously is as it should be, since constitutional standards require more than contract principles." *Gov't of the Virgin Islands v. Scotland*, 614 F.2d 360, 364 (3d Cir. 1980).

Terminology such as "making appellant whole" and "giving appellant the benefit of his bargain" is perhaps appropriate when it is possible to conform the agreement to an appellant's

understanding or order specific performance by the Government. In cases such as the one before us, however, it is obviously impossible at this late date to fulfill the appellant's understanding of his bargain. We simply cannot now arrange to provide financial support to appellant's dependents during a period of confinement that has been served in the past.

Improvidence of a guilty plea cannot be cured by payment of damages. A court attempting to provide "appropriate alternative relief" must focus on the fact that it is not providing compensation to the appellant, but attempting retroactively to render provident a plea that would otherwise be improvident. Thus, the proper question for a court to ask is not, "Will this remedy make the appellant whole?" The proper question is, "Would the appellant have pled guilty if he had been offered, at that time, the remedy we now propose, in lieu of the failed provision as he understood it?"

Furthermore, it appears that this question must be answered affirmatively *beyond a reasonable doubt* before a guilty plea pursuant to a pretrial agreement may be upheld. *See United States v. Albert*, 30 M.J. 331, 333 (CMA 1990), *cert. denied*, 498 U.S. 1028 (1991) ("Even making allowance for [the appellant's] desire to assure that his family would receive support during any period of confinement, we are convinced *beyond any reasonable doubt* that, if he had been fully apprised of his pay status as it existed at the time and had been offered a pretrial agreement which limited confinement but included no reference to forfeitures, *he would have accepted it and entered the same pleas of guilty*." (emphasis added)).

The issue, after all, is the voluntariness of Appellant's agreement to plead guilty, judicially confess, and waive some of his most basic Constitutional rights. "A plea of guilty is a judicial confession. Perhaps even more than a pretrial confession, therefore, it must appear that the plea is made voluntarily." *United States v. Griffin*, 15 U.S.C.MA. 135, 137, 35 C.M.R. 107, 109 (1964). "Once an issue is raised, therefore, concerning the voluntariness of a confession, [the Government] must affirmatively overcome the evidence of involuntariness and . . . must so persuade the members beyond a reasonable doubt. . . . Voluntariness, like trustworthiness, is a factual question. . . . It is such an important factor in evidence that the basis for its consideration should be measured by the same standard applicable to other factual determinations in criminal cases . . . for this reason, the Federal courts have adopted the sound rule that the United States must prove voluntariness beyond a reasonable doubt." *United States v. Odenweller*, 13 U.S.C.M.A. 71, 74-75, 32 C.M.R. 71, 74-75 (1962)(citations omitted).

Indeed, in the only other reported case in which an appellate court has actually fashioned an alternative remedy in order to salvage an otherwise failed plea agreement, the court justified the minor difference between its proposed remedy and the plea agreement provision by stating that "in light of the seriousness of the offenses involved, it seems *inconceivable* that this difference would have affected appellant's decision to plead guilty." *Olson*, 25 M.J. at 298 (emphasis added).[2]

---

[2] In *United States v. Olson*, 25 M.J. 293 (CMA 1987), the appellant had entered into an agreement to make restitution to the United States of any monies owed by him as a result of the charges against him. The record of the providence inquiry revealed that the appellant thought he had satisfied the requirement by previously paying $646.50. When the Government later sought to collect an additional $1,107.07 administratively, the appellant challenged the providence of his plea. The Court of Military Appeals agreed that a meeting of the minds had not occurred with respect to the agreement's restitution provision. The Court then "carr[ied] out the intent of the pretrial agreement" by setting aside the fine that had been adjudged ($1,000.00), an amount "almost equivalent to the $1,107.07 which was collected administratively from the accused." *Id.* at 298. In *United States v. Mitchell*, 50 M.J. 79, 83 (1999), CAAF instructed

In Appellant's assignment of errors for this Court's prior review of his case, he asked that his BCD be set aside or, in the alternative, that the findings and sentence be set aside and a rehearing ordered. We returned the record to the convening authority, instructing him that either alternative would constitute adequate remedial action. If either of those actions had been taken, this particular issue would not now be before us.[3] However, this Court espied a third alternative, and advised the convening authority that if he ascertained that disapproval of all confinement would result in full pay for the period of Appellant's confinement, then such action would cure the failure of the pretrial agreement. The convening authority adopted this approach. Appellant now complains that this approach was inadequate.

The pretrial agreement provision at issue in this case was crafted pursuant to Article 58b(b), UCMJ. The purpose of that Article is "to provide transitional compensation for the dependents of the accused." H.R. Conf. Rep. No. 104-450, at 853 (1996), *reprinted in* 1996 U.S.C.C.A.N. 238, 379. That purpose was clearly not fulfilled in this case.

The Appellant stated at trial that "the two most important things in [his] life" were his wife and daughter. His clemency request, submitted while he was still in confinement, stated that his "main concern throughout the negotiations of the pretrial agreement was the welfare of his family," and he requested "relief from the pay provisions [that caused the invalidation of his 'bargained for benefits'] or immediate release from jail in order to gain immediate employment . . . for the financial relief his family desperately needs."

On this record, I cannot find beyond a reasonable doubt that the Appellant would have pled the same had he been offered $4,157.60 (before tax withholding), some two-plus years in the future, in lieu of payment of pay and allowances to his dependents during his confinement.

I would return the record to the convening authority, advising him either to set aside the BCD or to set aside the findings and sentence and order a rehearing if he so wishes.



For the Court,

Kevin G. Ansley
Clerk of the Court

---

the Secretary of the Air Force and the Air Force Court of Criminal Appeals to "provide appropriate alternative relief," but as of the date of this writing, the Air Force has apparently been unable to devise such relief. *See United States v. Mitchell*, 2001 CAAF LEXIS 398 (Mar. 30, 2001).

[3] The grant of an appellant's request for specific relief can be viewed either as his affirmation that he would have pled guilty if the proposed remedy had been offered to him at the time, or as his current agreement to accept the proposed relief in resolution of his improvidence claim. In either case, Appellant has characterized his request as "appropriate alternative relief," and cannot later complain if his request is granted.