# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39260**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Rebekah D. RUSH**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 January 2019

————————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 20 months, and reduction to E-1. Sentence adjudged 24 January 2017 by GCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Clayton H. O'Connor, USAF; Major Meredith L. Steer, USAF; Captain Sean J. Sullivan, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and KIEFER, *Appellate Military Judges*.

Judge KIEFER delivered the opinion of the court, in which Senior Judge HUYGEN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

KIEFER, Judge:

Appellant, pursuant to her pleas and a pretrial agreement (PTA), was convicted by a military judge of one specification of willful dereliction of duty and four specifications of forgery in violation of Articles 92 and 123, Uniform Code

of Military Justice (UCMJ), 10 U.S.C. §§ 892, 923.[1] The military judge sentenced Appellant to a reduction to the grade of E-1, 20 months of confinement, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

On appeal, Appellant asserts three assignments of error: (1) whether Appellant is entitled to sentence relief due to the conditions of her post-trial confinement; (2) whether Appellant is entitled to relief because the Staff Judge Advocate's Recommendation (SJAR) failed to address alleged legal errors; and (3) whether the approved sentence is unduly harsh as compared to sentences in similar cases. We specified two additional issues: (1) whether trial defense counsel incorrectly stated in the clemency submission the effect of a particular term in the PTA and (2) whether Appellant is entitled to new post-trial processing in light of *United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2016) (mem.), either because the addendum to the SJAR did not correct an error in trial defense counsel's clemency submission regarding the particular term in the PTA or because the SJAR misadvised the convening authority concerning the PTA. We find that there was no meeting of the minds concerning the term in the PTA and thus set aside the findings and the sentence. Accordingly, we need not address the remaining assignments of error. Finally, we address the issue of timely appellate review.

## I. BACKGROUND

In early 2015, Appellant was serving as a dental technician at Keesler Air Force Base, Mississippi. During this time, she provided dental assessment and treatment to a civilian at his home without the supervision of a licensed dentist in violation of Air Force and state medical standards. Through her access to the civilian's home, Appellant obtained some of his checks, and on various occasions in November 2015, she forged multiple checks totaling $38,000. Appellant delivered some of the forged checks, totaling $18,000, for payment to a bank in Mississippi with the intent to defraud both the bank and the civilian owner of the checks.

One term of Appellant's PTA (hereinafter referred to as the "consider" term) stated that the convening authority would "[c]onsider disapproving, commuting, mitigating, or suspending the entire sentence, or any portion thereof, as a matter of clemency when taking Action, to the extent the Rules for Courts-Martial permit."

---

[1] Appellant pleaded not guilty to one specification of fleeing from apprehension, two specifications of larceny, and one specification of wrongful use with intent to defraud another's military identification card, all of which the Government withdrew and dismissed in accordance with the PTA.

During the PTA inquiry, the military judge indicated that he had not seen the "consider" term before and asked the parties to explain their respective interpretations of it. Trial counsel interpreted the "consider" term to mean that, if the adjudged sentence included confinement for more than six months or a punitive discharge, the convening authority would be limited by Article 60, UCMJ, 10 U.S.C. § 860, and Rule for Courts-Martial (R.C.M.) 1107 to granting the specific relief included in the quantum portion of the PTA with respect to confinement and a discharge.[2] Trial defense counsel interpreted the term to mean that the convening authority could grant full relief on all components of the adjudged sentence, to include disapproval of the entire sentence.

After summarizing the parties' views of the "consider" term, the military judge informed Appellant:

> Your counsel's reading of the rule may be that the convening authority has unlimited authority to reduce the punishment to any level he wants. *I'm not sure* that that's an accurate reading of the rule. *It may be*, but appellate courts may decide, no, the convening authority doesn't have that kind of unlimited authority as your counsel said. So I want to make sure that you understand that, first of all, this subjection [sic] of the PTA says, "to the extent that Rules for Courts-Martial permit." So there's a very *real possibility* that the convening authority would be limited. Say, for example, if the adjudged punishment exceeded six months of confinement or included a punitive discharge, the convening authority, in accordance with RCM 1107, *may not be able to* mitigate, suspend, commute or disapprove that sentence.

(Emphasis added).

After a brief recess, trial counsel indicated uncertainty as to whether there was a meeting of the minds between the parties on the meaning of the "consider" term of the PTA: "I'm still trying to hash out whether there's actually a meeting of the minds as it comes to this term. To say, 'This is what I expect,

---

[2] The National Defense Authorization Act for Fiscal Year 2014 modified Article 60, UCMJ, and limited the convening authority's ability to grant clemency. Pub. L. No. 113–66, § 1702(b), 127 Stat. 956–57 (2013). The pertinent text of the modified Article 60, UCMJ, providing for convening authority discretion to act on an adjudged sentence reads, "[T]he convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." *Id.* This limit on authority is subject to two exceptions, one of which is where the convening authority and accused have entered into a PTA. *Id.* Thus, pursuant to specific terms in a PTA, the convening authority may act on an adjudged sentence of confinement for more than six months, dismissal, dishonorable discharge, or bad conduct discharge. *Id.*

but maybe I'm wrong,' I don't know at this point that the accused understands the benefit of the bargain."

Trial counsel went on to restate his interpretation of the "consider" term, and the military judge summarized as follows:

> The government's position and my interpretation is that the language that says that, if there's a pretrial agreement, [the convening authority] can take action in accordance in accordance [sic] with that, means that he could reduce the sentence to whatever it says specifically in your Appendix A. If it says the maximum is three days of confinement, he can reduce it all the way down to that, but that he *might not be able* to take any other action limited by Article 60 of the UCMJ and Rule for Courts-Martial 1107.

(Emphasis added).

While still discussing the "consider" term, the military judge had the following exchange with Appellant:

> MJ [Military Judge]: . . . [T]he fact of the matter is that *a fair interpretation* of this *could mean* that if the sentence exceeds six months of confinement or if you get a punitive discharge, the convening authority *may not be permitted*, under the Rules for Courts-Martial and the UCMJ, to take any of the actions that are set forth in paragraph 2(e).
>
> Do you understand that?
>
> ACC [Appellant]: Yes, sir.
>
> MJ: Okay. And is that your understanding? Is your understanding of this agreement that the convening authority will consider doing anything that he is allowed to do under the law?
>
> ACC: Yes, sir. I understand that.

(Emphasis added).

The military judge ended the discussion with the following:

> So it seems to me that there's an agreement. Maybe there's a different interpretation of what the extent is that [the convening authority] can act upon [the sentence] in accordance with RCM 1107 and Article 60. Maybe there's a different interpretation, but ultimately the agreement seems to be that whatever he can do he will do as far as considering mitigating, suspending, suspending [sic], commuting or disapproving the sentence.

At the conclusion of the plea inquiry, the military judge accepted Appellant's guilty pleas and found her guilty of one specification of willful dereliction of duty and four specifications of forgery.

## II. DISCUSSION

### A. The "Consider" Term and Meeting of the Minds

Courts have long acknowledged that entering a plea of guilty is a serious and consequential decision. The Supreme Court of the United States has noted that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (citation omitted). "Because of the consequences resulting from guilty pleas, the Supreme Court has recognized the constitutional necessity of ensuring that such pleas are entered into voluntarily and knowingly, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Perron*, 58 M.J. 78, 81 (C.A.A.F. 2003) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "These concerns are no less important in our military system of justice, where pleading guilty constitutes a conviction and a waiver of the accused's trial rights." *Id.* (citing *United States v. Forester*, 48 M.J. 1, 2–3 (C.A.A.F. 1998)); *United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969)). "The military justice system imposes even stricter standards on military judges with regards to guilty pleas than those imposed on federal civilian judges." *Perron*, 58 M.J. at 81–82 (citing *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996)) (noting Article 45(a), UCMJ, requires military judges to reject guilty pleas if they cannot resolve inconsistencies and apparent defenses during the providence inquiry).

The interpretation of a PTA is a question of law, which we review de novo. *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). A PTA in the military justice system establishes a constitutional contract between the accused and the convening authority. *See United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006). Basic contract principles require a meeting of the minds between the parties as to the material terms of the agreement. Thus, the military judge's inquiry into the voluntariness of an accused's guilty plea includes an examination of the provisions of any PTA to ensure that there is a meeting of the minds between the parties to the agreement. *See* R.C.M. 705(c)(1)(A), 910(f). "We have long emphasized the critical role that a military judge and counsel must play to ensure that the record reflects a clear, shared understanding of the terms of any pretrial agreement between an accused and the convening authority." *United States v. Williams*, 60 M.J. 360, 362 (C.A.A.F. 2004) (citation omitted);

*see also United States v. Smith*, 56 M.J. 271, 272–73 (C.A.A.F. 2002); *Care*, 40 C.M.R. at 250–51.

In this case, the military judge elicited the parties' respective understandings of the "consider" term. The Government indicated that the convening authority would be limited by Article 60, UCMJ, and R.C.M. 1107, and that, if the adjudged sentence included confinement for more than six months or a punitive discharge, the convening authority could not disapprove, suspend, or mitigate confinement or a punitive discharge beyond the specific terms in the quantum portion of the PTA. The Defense stated that the "consider" term would allow the convening authority to act on all aspects of the adjudged sentence, including disapproval of the entire sentence.

The military judge seemed to share the Government's position; however, he did not rule on the "consider" term or clearly state its meaning in this case. Instead, he used ambiguous and qualifying language, which ranged from support for the Government's interpretation to statements that Appellant's view might be correct and the convening authority might be able to grant the full relief Appellant hoped for, up to and including disapproval of the entire sentence.

Trial counsel noted the confusion surrounding the "consider" term and the fact that there did not appear to be a meeting of the minds between the parties. The military judge added to this uncertainty by stating multiple times, "maybe there is a different interpretation" of the "consider" term. The military judge ultimately ended the discussion with a finding that the convening authority would do whatever the law allowed without resolving what that meant in Appellant's case.

In *United States v. Robinson*, 78 M.J. 578 (A.F. Ct. Crim. App. 2018), decided by this court in August of this year, we found that a PTA term nearly identical to the one at issue in Appellant's case was a legal nullity because it essentially required the convening authority to follow the law as he was already required to do. Here, the military judge's attempt to establish a meeting of the minds that the convening authority would do whatever the law allowed did not resolve the parties' conflicting interpretations of the "consider" term. Thus, we find that there was no meeting of the minds with regard to the meaning of the "consider" term of the PTA.

**B. The "Consider" Term and Materiality**

Because there was no meeting of the minds, we must next determine whether the "consider" term was material. "In an appeal that involves a misunderstanding or nonperformance by the Government, the critical issue is whether the misunderstanding or nonperformance relates to 'the material terms of the agreement.'" *Smith*, 56 M.J. at 273 (quoting R.C.M. 910(h)(3)). A

PTA term is material when it "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration . . . ." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "There is no requirement . . . that the term at issue constitute the 'only' reason for a pretrial agreement." *Smith*, 56 M.J. at 279.

In evaluating the circumstances of this case and whether the "consider" term was to any significant degree part of the inducement for Appellant to enter into the PTA, we first note that Appellant relied on an interpretation of the term that would have conveyed a significant benefit to her, namely, the convening authority's ability to disapprove any or all of the adjudged sentence. The magnitude of this possible relief demonstrates its importance to Appellant.

Further, Appellant maintained the same understanding of the "consider" term from trial, through clemency, and on appeal. During the plea inquiry with the military judge, she asserted that the convening authority could disapprove her entire sentence. This interpretation was confirmed in the written post-trial rights advisement, an appellate exhibit accepted by the trial court, which stated, "[t]he Convening Authority may approve the sentence adjudged, approve a lesser sentence, *or disapprove the sentence entirely*." (Emphasis added). In clemency, Appellant, through her counsel, told the convening authority he had the discretion to disapprove her confinement, and she requested that specific relief. In her affidavit to this court on appeal, Appellant stated that, when she signed the PTA and at trial, she believed the convening authority would have full discretion to act on her sentence. While there are instances where we may give less weight to a self-serving affidavit on appeal, especially if it contradicts information provided at trial or in clemency, Appellant's interpretation of the "consider" term has been consistent throughout the case.

It also appears the "consider" term was the product of some forethought by the parties. The military judge noted that in his experience this was a new PTA term, suggesting it was not simply "boilerplate" language carried over from another agreement but was instead specifically included in this agreement.[3]

Finally, military case law has noted that materiality may be demonstrated by the post-trial relief requested and the basis for that relief. In *Smith,* the court held that a term in the PTA impacting forfeitures was material, in part, because the accused cited concern for his family and the need to provide for them financially, and then requested relief from forfeitures, which was specifically addressed in his PTA. 56 M.J. at 279. The circumstances in this case are similar. In clemency, Appellant indicated concern for her family and noted issues with her disabled husband's ability to care for their children if she was

---

[3] While we cannot say the "consider" term is unique to Appellant's case, *Robinson* is the only other instance of the court considering this term. *See* 78 M.J. at 581.

confined for a long period of time, and she focused her post-trial efforts on reducing the adjudged confinement based on the "consider" term in the PTA. As in *Smith*, Appellant's focus on clemency relief consistent with her interpretation of the "consider" term further demonstrates the importance of this term in her decision to proceed with the PTA as well as her understanding that this term gave the convening authority very broad discretion to act on her sentence.[4]

Having found there was no meeting of the minds between the parties on the meaning of the "consider" term or its impact on the convening authority's discretion in clemency, we further find that the term was material. It rested on a promise of the convening authority to take certain action with respect to the sentence, and it was part of the inducement for Appellant to enter into the PTA.

## C. The "Consider" Term and Remedy

It is incumbent on the military judge to ensure the accused understands the PTA, the parties agree to its terms, the agreement satisfies the requirements of R.C.M. 705, and the accused has freely and voluntarily entered into the PTA and waived her constitutional rights. *Perron,* 58 M.J. at 82; *see also* Article 45(a), UCMJ, 10 U.S.C. § 845(a); R.C.M. 705, 910(f), 910(h)(2)–(3). If there is no agreement as to a material term in the PTA, "remedial action, in the form of specific performance, withdrawal of the plea, or alternative relief, is required." *Perron*, 58 M.J. at 82 (citations omitted).

### 1. Specific Performance

In evaluating remedial actions,

> [i]f the military judge determines that the accused does not understand the material terms of the agreement, or that the parties disagree as to such terms, the military judge shall conform, with the consent of the Government, the agreement to the accused's understanding or permit the accused to withdraw the plea.

R.C.M. 910(h)(3); *see also United States v. Olson*, 25 M.J. 293, 296 (C.M.A. 1987). Here, the military judge did not conform the agreement to Appellant's understanding. He failed to specifically rule on the meaning of the "consider" term, and he appeared to favor the Government's interpretation. Similarly, in

---

[4] Appellant's case is also similar to *Smith*, 56 M.J. at 276, in that the Government failed to recognize that Appellant's expiration of term of service nullified the PTA term waiving forfeiture of pay for the benefit of Appellant's dependents.

clemency, the staff judge advocate advised the convening authority that he could not take action consistent with Appellant's interpretation of the PTA.

We have also considered whether we can at this point order specific performance in the form of new post-trial processing and require the convening authority to fulfill the "consider" term as interpreted by Appellant. In *Robinson*, we found the "consider" term was a legal nullity and could not be interpreted in a manner that expands the convening authority's discretion beyond the limitations set forth in Article 60, UCMJ. 78 M.J. 578, 581 (A.F. Ct. Crim. App. 2018). We noted, "the convening authority's agreement to 'consider disapproving, commuting, mitigating, or suspending the entire sentence or any portion thereof, as a matter of clemency when taking Action' was in essence an empty promise." *Id.* at 583. Thus, we cannot order the convening authority to do something that this court has determined he is not authorized to do. In other words, we cannot order specific performance.

### 2. Withdrawal from the PTA

As with other decisions regarding guilty pleas and PTAs, the decision to withdraw or proceed must be knowing and voluntary. In *Robinson*, the court found that "[t]he military judge neither inquired further into Appellant's or either counsel's understanding of [the 'consider' term] nor clarified the ways in which the convening authority would be limited by the restrictions set forth in Article 60, UCMJ, 10 U.S.C. § 860." *Id.* at 580. Consequently, the court found the pleas improvident and set aside the findings and sentence. *Id.* at 579.

Unlike in *Robinson*, the military judge in Appellant's case conducted a lengthy discussion of the "consider" term. The fact that there was additional discussion, however, does not guarantee a knowing and voluntary decision to proceed with the PTA. We acknowledge that the military judge discussed withdrawal from the PTA with Appellant, but the problem here was that the totality of the inquiry left significant confusion as to the meaning of the "consider" term. While the military judge indicated his preferred interpretation, he did not definitively rule on the provision and repeatedly used ambiguous and qualifying language to describe both Appellant's and the Government's interpretations.

In the Government's brief, it cites three cases for the proposition that a plea is not improvident simply because of uncertainty on an issue of law—*United States v. Poole*, 26 M.J. 272, 274 (C.M.A. 1988); *United States v. Hunt*, 10 M.J. 222, 223 (C.M.A. 1981); and *United States v. Hedlund*, 7 M.J. 271, 273 (C.M.A. 1979). All of these cases, however, are distinguishable from Appellant's case. First, the military judges in those cases made definitive rulings on issues of law. No such ruling was provided in this case, and Appellant was left to evaluate the merits of her position in a confusing and unclear environment. Second, *Poole*, *Hunt*, and *Hedlund* did not involve conflicting positions of the parties on

a PTA term, where the requirement for clarity is paramount.[5] In fact, the true import of *Poole*, *Hunt*, and *Hedlund* to Appellant's case is their recognition that "all the circumstances of the case presented by the record must be considered to determine whether the misapprehension of [an issue] affected the guilty plea, or whether that factor was insubstantial in [appellant's] decision to plead." *Hunt*, 10 M.J. at 223–224 (citation omitted); *see Poole*, 26 M.J. at 272 (citations omitted); *Hedlund*, 7 M.J. at 273.

Here, the military judge did not make a definitive ruling as to the meaning of the "consider" term and repeatedly used qualifying language to describe the provision, ultimately leading trial counsel to question whether there was a meeting of the minds between the parties. In response, the military judge indicated the Government's interpretation was probably correct but still suggested Appellant's position had merit and might provide the relief Appellant expected. Although the discussion in this case was more extensive than that undertaken in *Robinson*, the sum total of the inquiry left open the meaning of a material term in the PTA and injected ambiguities that undermined the voluntariness of Appellant's decision to continue with the guilty plea and PTA.

There is a difference between an accused who is faced with a specific unfavorable ruling from a military judge and harbors some hope that she may prevail on appeal and an accused who agrees to proceed with a PTA where she has been informed by the military judge that her interpretation may be correct. This is not to say an accused can simply create interpretations of PTA terms from thin air, advance those same unsupported understandings through posttrial processing, and later successfully claim an improvident plea. An accused who elects to go forward with a PTA after receiving a clear ruling that is inconsistent with her interpretation of a material term proceeds at her own peril. On this record, however, Appellant did not receive a clear ruling, and the inquiry on the "consider" term, as a whole, created an environment where Appellant could have reasonably determined she would receive the benefit of her bargain.

We find that the totality of the circumstances in this case resulted in numerous uncertainties that undermined the knowing and voluntary nature of Appellant's decision to proceed with the PTA, despite the fact that she acknowledged a possible outcome consistent with the Government's interpretation of the "consider" term. The military judge's failure to definitively rule on the meaning of the term combined with the ambiguities of the discussion left open

---

[5] *Poole*, *Hunt*, and *Hedlund* all deal with situations where the military judge and the parties misunderstood the maximum sentence based on the offenses and pleas. *Poole*, 26 M.J. at 273–74; *Hunt*, 10 M.J. at 223; *Hedlund*, 7 M.J. at 273.

the possibility that the convening authority had the discretion to grant Appellant full clemency, when the convening authority did not. Thus, although the military judge offered Appellant the chance to withdraw from the PTA, Appellant's decision to proceed was not knowing and voluntary.

### 3. Alternative Relief

If the bargained-for benefit of a PTA term is outside the authority of the Government to provide, appellate courts may consider whether some "appropriate alternative relief" may satisfy the benefit of the bargain.[6] *See United States v. Mitchell*, 50 M.J. 79, 83 (C.A.A.F. 1999) (per curiam).

We note that generally we cannot order alternative relief in the absence of the agreement of both parties. "[I]mposing alternative relief on an unwilling appellant to rectify a mutual misunderstanding of a material term in a pretrial agreement violates the appellant's *Fifth Amendment* right to due process." *Perron*, 58 M.J. at 86. "When an appellate court substitutes its own remedies in place of negotiated plea terms, it steps into the accused's shoes and is in effect renegotiating the accused's plea agreement and waiving his rights. This, an appellate court cannot do without the accused's consent." *Id.* at 85.

Here, the Government has not offered any alternative relief that it believes is appropriate. The only relief Appellant has requested is the setting aside of the findings and sentence. "If the court concludes . . . that other relief . . . is insufficient, the court may set aside the findings, as well as the sentence, and authorize a rehearing based on appellant's improvident pleas." *Mitchell*, 50 M.J. at 83. We do so here.

### D. Timely Appellate Review

Under *United States v. Moreno*, courts apply a presumption of unreasonable delay when the time from docketing to issuance of the decision exceeds 18 months. 63 M.J. 129, 142 (C.A.A.F. 2006). This presumption triggers analysis applying the four factors set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to timely review, and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citations omitted).

Analyzing these factors, we note this case was docketed with the court on 2 June 2017, and the opinion was not issued within 18 months. Despite this facially unreasonable delay, we find no due process violation. The length of

---

[6] Pursuant to the "consider" term, Appellant believed she bargained for the convening authority to consider relief from her adjudged sentence up to and including disapproval of her entire sentence. As noted in section II.C.1, we adopt the holding in *Robinson*, and find that the "consider" term was a legal nullity, and Appellant's expected benefit was not available in this case.

delay is approximately one month and is not excessive. Appellant did not demand speedy appellate review and instead requested five enlargements of time to submit her assignments of error. Further delay was precipitated by unique circumstances that required the court to specify issues and necessitated additional briefing by both parties. Finally, with respect to prejudice, Appellant has not asserted any of the factors noted in *Moreno*, including oppressive incarceration, anxiety and concern, or impact on her ability to present a defense.[7] 63 M.J. at 138-39. We also do not find any prejudice to Appellant based on the one-month delay beyond the presumptively reasonable 18-month period.

Even when appellate delay does not rise to the level of a due process violation, this court may exercise its broad authority under Article 66(c), UCMJ, to grant sentence relief in the absence of a showing of material prejudice. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." "The essential inquiry remains appropriateness in light of all circumstances." *Id.*

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Those factors include how long the delay exceeded appellate review standards, the reasons noted by the Government for the delay, whether the Government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or the institution, the goals of justice and good order and discipline, and, finally, whether the court can provide any meaningful relief given the passage of time. *Id.* No single factor is dispositive, and we may consider other factors as appropriate. *Id.*

Here, the delay consists of approximately one month beyond the presumptively reasonable 18 months for appellate review, and the reason for the delay is not based on bad faith or gross indifference by the Government. Instead, the delay, particularly after the filing of the assignments of error, was a function of this court's effort to ensure all relevant matters were thoroughly addressed.

Considering the totality of the circumstances, we find that the appellate delay in this case was not egregious or excessive. We are mindful of the need for timely post-trial processing; however, we must balance this with the need to fully evaluate all issues before the court, including those that may arise during appellate review. *See Moreno*, 62 M.J. at 137–38 (providing a more flexible

---

[7] We note that one of Appellant's assignments of error dealt with conditions of post-trial confinement, but, as indicated in Appellant's filings, these circumstances were resolved within a few weeks of the start of her confinement and more than a year prior to the end of the presumptively reasonable period for appellate review.

review of the time period of a court of criminal appeal's decision because it involves the exercise of judicial decision-making authority).

## III. CONCLUSION

The findings and the sentence are **SET ASIDE**. A rehearing is authorized. Article 66, UCMJ, 10 U.S.C. § 866.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court